# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 01-20247

————————

BEVERLY THOMAS,

Plaintiff-Appellee,

VERSUS

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

July 1, 2002

Before REAVLEY, SMITH, and DENNIS,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Beverly Thomas sued the Texas Department of Criminal Justice ("TDCJ"), claiming it had denied her a promotion and housing because of her sex, race, and complaints to the Equal Opportunity Employment Commission ("EEOC"). In the first trial, the jury found that TDCJ had violated title VII by refusing to grant Thomas housing because of her sex and race and refusing to promote her in retaliation for her EEOC complaints. We affirmed the jury's decision on the promotion claim but held that Thomas had not properly preserved her allegations of race discrimination on the housing claim. *Thomas v. TDCJ* ("*Thomas I*"), 220 F.3d 389 (5th Cir. 2000). The verdict did not distinguish between sex and race discrimination on the housing claim. The jury also had awarded damages as a lump sum. Those features of the verdict compelled a new

trial on the housing claim and damages. The second jury found for TDCJ on the housing claim and awarded $30,000 for past emotional distress and $100,000 for future emotional distress based on the promotion claim.

In this appeal, we find no error in the jury instructions. We do, however, conclude that the award for future emotional distress was excessive and that the district court erred when calculating prejudgment interest. We direct a remittitur or new trial on those damages, and we remand for the district court to reconsider its award of attorneys' fees.

I.

In 1979, Thomas began working for TDCJ at its Gainesville Unit. In 1985, TDCJ promoted her to sergeant. In 1992, she transferred to the Estelle Unit. In July 1995, TDCJ promoted her to lieutenant and assigned her to work with high security prisoners. After her promotion, Thomas requested housing, because the TDCJ benefits policy permits lieutenants to live rent free in state-owned housing.

Thomas requested a hearing from Warden Fred Becker to discuss housing. Becker said that he would like to give her a house, but all of the houses were being renovated. Thomas wrote a letter asking to be placed on a waiting list. In February 1996, Fred Figueroa became Warden of the Estelle Unit. Thomas met with Figueroa and requested housing. Figueroa informed her that because she was single and had no children, her chances of receiving housing were slim to none. In June 1996, Thomas filed a complaint with the EEOC alleging that TDCJ had denied her housing on the basis of sex.

In November 1996, Thomas applied for promotion to captain. In December 1996 and January 1997, TDCJ denied her the promotion; three white males filled the available captain positions. In April 1997, Thomas filed another EEOC charge complaining that TDCJ had denied her the promotion because of discrimination on the basis of race, sex, and retaliation.

II.

In February 1997, Thomas sued TDCJ, alleging discrimination in the denial of housing and of the promotion. The district court permitted her to amend the complaint to add allegations of racial discrimination to her charge of sex discrimination regarding the housing denial. In February 1998, TDCJ placed Thomas in a house at the Estelle Unit.

The jury found that TDCJ had unlawfully denied Thomas housing because of her sex and race and had retaliated against her by failing to promote her to captain. The jury awarded $107,000 in compensatory damages. The district court entered judgment awarding compensatory damages, back pay, and attorneys' fees. The court also issued entered an injunction that forbade TDCJ from further discrimination against Thomas, ordered TDCJ to transfer her from the Estelle Unit, and ordered appropriate housing on reassignment. Finally, the court prohibited TDCJ from implementing housing policies that were contrary to anti-retaliation provisions of state and federal law or insensitive to sex discrimination.

TDCJ appealed. In *Thomas I*, 220 F.3d at 392-94, we affirmed the denial of TDCJ's motion for judgment as a matter of law ("j.m.l.") or a new trial on the promotion claim. We also ruled, however, that the district court had abused its discretion by permitting Thomas to amend her pretrial order to add

a race discrimination claim to her original sex discrimination claim for the housing delay. *Id.* at 395. Further, the jury instructions on race discrimination for the housing claim constituted an abuse of discretion, because the jury should not have been able to consider race discrimination. *Id.*

We reversed the district court only for permitting the pretrial amendment and improperly formulating jury instructions on the housing claim. *Id.* at 396. This also required a new trial on compensatory damages, because the jury had not divided the damage award between the housing and promotion claims. On remand, the court had to consider the merits of the housing claim and the damages owed under all the claims. *Id.*

At the beginning of the second trial, the court announced that "the jury instructions are simply going to be finding as to housing and finding as to damages and finding as to other damages." The court instructed that a previous jury had found that TDCJ had failed to promote Thomas and had retaliated against her.

The second jury found that TDCJ had not refused Thomas housing because of her sex. The jury then considered damages for "TDCJ's failure to promote Ms. Thomas to captain, and retaliation against her." Thomas received $30,000 for past emotional damage and $100,000 for future emotional distress.

The court entered judgment ordering the TDCJ to promote Thomas before January 31, 2001, and to pay compensatory damages of $130,000, back pay, pre- and postjudgment interest, attorneys' fees, and costs. The TDCJ filed a renewed motion for j.m.l. and new trial, which were denied.

III.

TDCJ argues that the jury instruction impermissibly led the jury to award damages for the failure to promote and retaliation as independent events. TDCJ argues that *Thomas I* compelled the court to inform the jury that TDCJ had retaliated only by failing to promote Thomas to captain. TDCJ misinterprets *Thomas I*, in which we decided that TDCJ had retaliated both by failing to promote and by refusing to transfer Thomas. The jury instructions were proper.

A.

We review an error in jury instructions for abuse of discretion. A challenge to jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)). A single inaccurate, ambiguous, or incomplete clause does not dictate reversal if the instructions as a whole properly express the law. *Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. & Surety Co.*, 625 F.2d 1167, 1169 (5th Cir. Unit A 1980). Even if the challenger proves the instructions misguided the jury, we reverse only if the erroneous instruction affected the outcome of the case. *Deines*, 164 F.3d at 279.

B.

The court repeatedly instructed the second jury to award compensatory damages for failure to promote and retaliation.[1] TDCJ cor

---

[1] The court instructed,

*Second*, what damages, if any flow from the
(continued...)

rectly argues that a jury can award compensatory damages only for adverse employment actions. *Mattern v. Eastern Kodak Co.*, 104 F.3d 702, 708-09 (5th Cir. 1997). TDCJ also correctly states that *if* TDCJ only failed to promote Thomas, then Thomas should not *also* recover for retaliatory acts that did not rise to the level of adverse employment actions. *Thompkins v. Cyr*, 202 F.3d 770, 785-86 (5th Cir. 2000).

TDCJ, however, reads *Thomas I* incorrectly. In *Thomas I*, 220 F.3d at 394 & n.2, we addressed which actions constituted adverse employment actions severe enough to support a retaliation claim. We distinguished between the evidence of TDCJ's retaliatory motive and the employer's acts of retaliation. *Id.* Giving Thomas a house in deplorable condition, twice disciplining her on flimsy charges, and shouting at her for filing grievances provided evidence of TDCJ's motive. *Id.*

*Thomas I* also identified *more than one* retaliatory adverse employment action. The panel repeatedly used the conjunction "and" to describe TDCJ's separate actions in failing to promote and retaliating against Thomas.[2] We identified two, separate adverse employment actionsSSthe "failure to promote Thomas" *and* the "refusal to transfer her to other positions."[3]

After TDCJ denied Thomas the promotion to captain, she repeatedly applied for transfers outside the Estelle unit, where her race, sex, and history of complaints would not be an issue. Thomas applied for a program administrator post and an administrative technician position. The TDCJ denied all of these transfer applications, and, in *Thomas I*, the panel interpreted the verdict as finding that the "refusal to transfer" was retaliatory. Given our holding in *Thomas I*, the district court correctly instructed the jury to consider both the failure to promote and TDCJ's other retaliatory action.

## C.
The district court also refused to give any

---

[1](...continued)
conduct of the TDCJ for its conduct in failing to promote Ms. Thomas in 1996 based on her sex or race and retaliating against her.

. . .

Because another jury has found that the TDCJ failed to promote Ms. Thomas to Captain and retaliated against her, you must determine the amount of damages, if any, to which she is entitled.

Moreover, in one of its interrogatories, the court asked the jury to consider the amount of damages appropriate for "the TDCJ's failure to promote Ms. Thomas to Captain, and retaliation against her, and TDCJ's denial of housing to Ms. Thomas."

---

[2] *Thomas I*, 220 F.3d at 395 n.3 ("The jury was asked separate interrogatories on the housing, failure to promote, and retaliation claims. Thus the error on the submission of race as a part of the housing claim does not effect [*sic*] the failure to promote and retaliation claims."); *id.* at 396 ("We hold that the plaintiff, Beverly Thomas, presented sufficient evidence to allow a reasonable jury to conclude that TDCJ engaged in racial and gender discrimination in its failure to promote Thomas to Captain, and that TDCJ also engaged in retaliation.").

[3] *Id.* at 394 n.2. *See id.* at 394 ("Thus Thomas presented evidence for a reasonable juror to conclude that TDCJ failed to promote or transfer her because she engaged in protected activity").

instruction concerning front pay. This made sense, because the court did not permit the jury to consider the issue of front pay. The only instruction the court gave on pay was that the court, not the jury, would decide back pay.

TDCJ maintains that the court should have given a companion instruction expressly excluding front pay. TDCJ argues that the jury inevitably inferred that it should include front pay in compensatory damages, despite the absence of any instruction.

The district court does not have an obligation to refute every possible, impermissible inference from the jury instructions. TDCJ does not cite a single case holding that an instruction on back pay requires an instruction on front pay. Reversing on this basis would make it impossible for the court to instruct a jury: The court would have to preempt every possible impermissible inference.

Instead, we review judgments to ensure that jurors receive proper instructions on the acceptable methods and bases of recovery. The district court gave proper instructions on the bases for compensatory damages.[4]

IV.

TDCJ requests that we reverse the denial of its motions for j.m.l. and new trial on future emotional distress damages. The jury's

---

[4] TDCJ argues briefly that the district court erred by instructing the jury that it could consider future emotional distress. As discussed *infra*, we believe the court instructed the jury properly, because it could reasonably award *some* damages for future emotional harm. We merely believe that the amount of those damages was excessive and unsupported by the evidence.

$30,000 award for past emotional distress fits within the range of damages that we have established, and TDCJ does not appeal that award. Thomas, however, failed to prove that the TDCJ's unlawful actions *caused* $100,000 in *future* emotional distress damages. We reverse, because our precedent does not support a $100,000 award based on such insubstantial injuries. On remand, Thomas may choose between accepting a remittitur to $75,000 of future emotional distress damages or a new trial.

A.

The parties disagree over whether our review of the denial of j.m.l. should be *de novo* or for plain error. TDCJ's motion for j.m.l. at the close of all evidence did not include an attack on the evidence's sufficiency to prove emotional damages. TDCJ did include such an argument in its FED. R. CIV. P. 50(b) post-judgment motion, however, and Thomas did not argue waiver.

A party who does not raise the waiver bar when opposing a rule 50(b) motion may not raise that bar on appeal.[5] TDCJ's motion for j.m.l. is properly asserted on appeal, and we apply the *de novo* standard. *Deffenbaugh-Williams*, 188 F.3d at 285.

When reviewing the denial of j.m.l., we must review the sufficiency of the evidence

---

[5] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.5 (5th Cir. 1999) ("Rule 50(b) motions may not, of course, raise issues not raised under Rule 50(a); but new grounds may be considered where, as here, the non-movant does not object.") (citations omitted); *Thompson & Wallace, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996) ("Because the plaintiffs did not raise the waiver bar in opposing the rule 50(b) motion, they may not raise that bar on appeal.") (citations omitted).

and consider whether reasonable and fair-minded people could reach the same conclusion. *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 974 (5th Cir. 1996). We "should review all of the evidence in the record . . . [but] must draw all reasonable inferences in favor of the nonmoving party, and [ ] may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of the legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150-51 (quotation and citations omitted).

We apply a more stringent standard§§abuse of discretion§§when determining whether to grant a new trial. *Whitehead v. Food Max, Inc.*, 163 F.3d 265, 269, 270 n.2 (5th Cir. 1998); *Baker v. Dillon*, 389 F.2d 57, 58 (5th Cir. 1968). "A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (citation and quotation omitted). We must affirm denial of a new trial unless the movant makes a "clear showing" of an "'absolute absence of evidence to support the jury's verdict,' thus indicating that the district court abused its discretion in refusing to find the jury's verdict 'contrary to the great weight of the evidence.'" *Whitehead*, 163 F.3d at 269 (citations omitted).

TDCJ did not request a remittitur in either the district court or its brief on appeal. We do, however, have the discretion to convert a motion for new trial into a remittitur.[6] We review

---

[6] *Vadie v. Miss. State Univ.*, 218 F.3d 365, 378 (continued...)

the denial of remittitur for abuse of discretion. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). We order a remittitur only when "left with the perception that the verdict is clearly excessive." *Id*.

### B.

TDCJ's request for j.m.l. or a new trial boils down to challenging the sufficiency of Thomas's evidence. A plaintiff must present evidence of an emotional injury's character and severity to recover greater than nominal damages.[7] TDCJ argues that Thomas did not present evidence sufficient to support the $100,000 award for future emotional harm.

We have shown great deference to jury damage awards ratified by the district court. *Calderera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). Courts have focused on two necessary elements for the plaintiff to recover emotional distress damages. *Giles*, 245 F.3d at 488. First, the plaintiff must provide

---

[6](...continued)
(5th Cir. 2000) ("Although we note that MSU did not ask for remittitur when it sought judgment as a matter of law or, in the alternative, a new trial after the jury rendered its verdict, it would have been within the district court's discretion to sua sponte suggest remittitur. This Court has the same power."), *cert. denied*, 531 U.S. 1113, 531 U.S. 1150 (2001); *McDonald v. Bennett*, 674 F.2d 1080, 1092 (5th Cir.) (explaining that appellate and district courts have power to order remittitur), *modified on reh'g*, 679 F.2d 415 (5th Cir. 1982).

[7] *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978) (stating that "an award of damages must be supported by competent evidence"); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (same); *Brady v. Fort Bend County*, 145 F.3d 691, 719 (5th Cir. 1998) (noting the importance of detailed, nonconclusional statements).

specific evidence of the nature and extent of the harm. *Id*. Second, he must make more than vague allegations to support his claim. *Id.* We prefer corroboration and expert testimony. *Id.*

With those two criteria in mind, we review the awards for emotional distress in similar cases. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 589 (5th Cir. 1989). We limit our comparison to cases in the "relevant jurisdiction," which is the Fifth Circuit. *Douglass v. Delta Airlines, Inc.*, 897 F.2d 1336, 1339 (5th Cir. 1990).

Out of deference to the jury's decision, the "maximum recovery rule" compels us to remit damages only to the maximum amount the jury could have awarded. *Giles*, 245 F.3d at 488-89. As an extension of the "maximum recovery rule," we usually apply a multiplier, or percentage enhancement, to past similar awards. If the verdict falls within the range established by previous awards and the enhancement, we will uphold the decision.[8]

---

[8] *Giles*, 245 F.3d at 489 (50% multiplier); *Dixon*, 754 F.2d at 590 (same); *Calderera*, 705 F.2d at 784 (same). *But see Lebron v. United States*, 279 F.3d 321 (5th Cir. 2002) (applying 33% enhancement); *Marcel v. Placid Oil*, 11 F.3d 563 (5th Cir. 1994) (same); *Douglass*, 897 F.2d 1336 (same); *Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311 (5th Cir. 1984) (same). Although all of the cases using a 50% enhancement involved jury trials, those applying a 33% multiplier are split. *Lebron* and *Douglass* were bench trials, while *Marcel* and *Haley* were jury trials.

Faced with this impasse between competing multipliers, we recently chose the 50% figure. *Salinas v. O'Neill*, 286 F.3d 827, 831 n.6 (5th Cir. (continued...)

We have approved six-figure emotional distress awards in five employment discrimination and § 1983 cases. In *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 775 (5th Cir. 1996), we upheld an award of $100,000 to an officer transferred in violation of her First Amendment rights. We premised the award on the plaintiff's testimony describing "depression, weight loss, intestinal troubles, and marital problems." *Id*. The plaintiff also testified that she had consulted a psychologist. *Id.*

In *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 262 (5th Cir.), *vacated*, 187 F.3d 680 (5th Cir.), *aff'd on other grounds*, 213 F.3d 209 (5th Cir. 1999) (en banc), *cert. denied*, 531 U.S. 958 (2000), we approved a $100,000 award under the Americans with Disabilities Act for past and future mental anguish. The award was 550 times the size of the lost wages award, but the panel did not discuss the specifics of Rizzo's emotional damages. *Id.*

In *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486 (5th Cir. 2000), we upheld a compensatory damage award of $100,000 for emotional distress based on the plaintiff's descriptions of "severe emotional distress," "sleep loss," "severe loss of weight," and "beginning smoking." We affirmed the award and noted that the testimony of the plaintiff alone can support emotional damages. *Id.*

---

[8](...continued) 2002). The apparent origins of the two multipliers are *Calderera* and *Haley*. *Calderera* predates *Haley* and thus controls under our circuit's rule of orderliness. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999).

In *Giles*, 245 F.3d at 488-89, we remitted an emotional damage award to $100,000 where a coworker testified as to the plaintiff's sleeping trouble, headaches, marital difficulties, and loss of prestige and social connec tions.[9] The coworker testified that the plaintiff "appeared despondent, depressed, down, and absolutely utterly discouraged about not being able to go back to work." *Id.* at 488. Finally, in *Salinas*, 286 F.3d at 832, we remitted a jury award from $300,000 to $100,000, where a customs service agent won a title VII claim for retaliation.[10] The plaintiff and his wife had testified that the retaliation caused him to suffer from paranoia, take excessive sick leave, and visit physicians more than seventy times. *Id.* at 832. The emotional toll had a significant impact on his relationship with his wife and son. *Id.*[11]

---

[9] The panel increased the award by 50% multiplier, yielding a final award of $150,000. *Giles*, 245 F.3d at 489.

[10] The jury originally awarded $1,000,000, but the district court correctly remitted the amount to $300,000 to conform with title VII's statutory damage caps. *Salinas*, 286 F.3d at 829.

[11] In *Green v. Administrators of Tulane Educ. Fund,* 284 F.3d 642, 660-61 (5th Cir. 2002), we affirmed a $300,000 title VII award for unspecified compensatory damages. The decision may have implicitly affirmed a six-figure award for emotional distress damages, but the defendants did not challenge, and we did not consider, the verdict under our line of cases addressing emotional distress damages.

Where an opinion fails to address a question squarely, we will not treat it as binding precedent. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, (continued...)

In three employment discrimination cases, we have remitted emotional distress awards to less than six figures. In *Flowers v. S. Reg'l Physician Servs., Inc.,* 247 F.3d 229, 236-37 (5th Cir. 2001), we vacated a $100,000 award for the emotional impact of disability-based harassment. We emphasized that the plaintiff's testimony was uncorroborated, and every physical and psychological complaint occurred after the discharge. *Id.* at 239 & n.8. In *Vadie*, 218 F.3d at 375-76, we remitted a title VII award of $300,000 to $10,000. We emphasized that the plaintiffs uncorroborated testimony that he was "destroyed," "totally ruined," "totally ill," and "took many doctors, many pills" was insufficient to support the verdict. In *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996), we remitted $40,000 and $150,000 awards to nominal damages where a hospital had discriminated against a nurse and medical technician. One plaintiff's uncorroborated testimony described feelings of frustration, low self-esteem, anger, and paranoia, *id.* at 939; the other testified that her discharge emotionally scarred her and resulted in unemployment, *id.* at 940.

### C.

Thomas testified to severe past emotional distress. She wept while describing the emotional impact of the missed promotion. She said that "it hurt, it hurt," because "[i]t

---

[11](...continued) are not to be considered as having been so decided as to constitute precedents); *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.").

took everything I had just to sit there and watch somebody take a job that I had worked for all my life." After the promotion denial and throughout the retaliatory period, Thomas was tearful, felt like a failure, felt isolated from her coworkers, and felt helpless to alter her circumstances. She explained that she could not sleep and suffered from nausea. Her depression deepened, and she began dwelling on death. Her treating physician prescribed an antidepressant.

Other witnesses corroborated the severity of Thomas's past emotional distress. Elroy Thomas, her older brother, testified that Thomas became "moody," "depressed," "standoffish," and isolated during her employment at the Estelle Unit. Kerney Hamblen, a co-worker and friend, averred that Thomas went from being "extremely outgoing and full of life" to "depressed or in a bad mood" "at times." JoAnn Palmer, Thomas's older sister, explained that Thomas became withdrawn, prone to breaking out in tears, and depressed. The jury concluded that this evidence of *past* emotional harm warranted $30,000 in damages.

By the time of the second trial, however, TDCJ had transferred Thomas to another unit. She testified that she currently enjoys her job. Although she has given up hope of future promotions, she still derives great pleasure from helping others at work. She admitted that she has received favorable evaluations; she has been named employee of the month. She has continued to pursue her degree at Sam Houston University, where she originally began taking classes to further her career ambitions.

The evidence pointed to some ongoing and future emotional distress, but nothing as severe

as what Thomas suffered during the retaliatory period. She described continued anger and fears that the lawsuit will bar her from future promotion. She continues to suffer from a heart condition, everyday fatigue, and stress. Elroy Thomas testified that Thomas remains "shook up, worried, depressed, [and] scared"; his testimony, however, plainly describes her emotional distress as less severe than what she experienced while employed at the Estelle Unit. Hamblen noted that the housing dispute and promotion denials had changed Thomas's mood, but she admitted that she did not see Thomas much anymore. Her testimony about Thomas's contemporaneous emotional reactions cannot provide much of a basis for estimating future emotional harm.

Finally, Palmer stated that Thomas still suffers from mood "swings" when "she is very melancholy" and "just really not her[self]"; Palmer described these moods as off and on; she also admits that Thomas's contemporaneous emotional distress was much more severe. Thomas presented enough evidence to justify instructing the jury on future emotional harm, and her evidence supported an award. The question whether that evidence supported a $100,000 award is an entirely different matter, however.

At a superficial level, past cases and the maximum recovery rule might point toward affirming the jury's award. Overall, Thomas presented convincing and substantial evidence of emotional damages. Thomas presented substantial evidence of acute, past mental anguish, and the jury chose to award her $30,000.

The jury, however, awarded over three times that amount for future emotional harms, despite substantially weaker evidence. First, the witnesses testified that Thomas's

emotional difficulties have lessened substantially since her transfer. She enjoys her current job, and her current supervisors have commended her performance. Second, Thomas did not provide evidence tightly linking the denial of a promotion and future emotional harm. As one example, the witnesses tended to discuss the collective emotional impact of the promotion denials, transfer refusals, and housing delay. The jury, however, determined that the TDCJ acted lawfully when it delayed indefinitely Thomas's housing.

The jury should not have included the impact of the housing denial when considering the emotional impact. The high damage award suggests that it ignored this distinction. As another example, Thomas testified about a heart condition that bothers her to this day. But she never even stated that she believes that TDCJ's actions had lasting effects on her cardiac health; she certainly does not present any medical evidence connecting her past job-related stress to her current physical condition.

On this evidence, a reasonable jury could not have concluded that Thomas's future emotional distress will be over three times worse than the emotional harm she has already suffered. At most, the jury properly could have awarded only $50,000.[12] The maximum recovery rule requires us to add 50%, so we remit future emotional distress to $75,000. Thomas may elect between accepting that amount or another trial on damages.

---

[12] We have remitted emotional distress damages to similar levels, even without the guidance of an independent award for past mental anguish. *Vadie*, 218 F.3d at 378 (remitting award from $300,000 to $10,000).

V.

TDCJ argues that the district court made three errors when calculating prejudgment interest. First, TDCJ claims the court mistakenly computed prejudgment interest from January 1996 rather than from January 1997. Second, TDCJ argues that courts should never award prejudgment interest on emotional damages. Third, TDCJ avers that courts should not award prejudgment interest on future damages. We review prejudgment interest for an abuse of discretion. *Sellers v. Delgado Community College*, 839 F.2d 1132, 1140 (5th Cir. 1988). We reverse on the first and third grounds only.

A.

District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action. *Gloria v. Valley Grain Prods., Inc.*, 72 F.3d 497, 499 (5th Cir. 1996) (describing general rule but refusing to reverse for denying prejudgment interest). The district court awarded 6% prejudgment interest from January 1996 forward. The TDCJ first denied Thomas the promotion in December 1996, and TDCJ argues that she should have received prejudgment interest only from January 1, 1997, when she would have received her first pay check as captain. Thomas agrees that prejudgment interest should have run from January 1, 1997. We reverse and remand for the district court to recalculate prejudgment interest from that date.

B.

Prejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest

10

whenever a certain sum is involved.[13] Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole. *Batson*, 782 F.2d at 1316.

TDCJ argues only that Thomas's underlying claims for emotional damage lack merit. This is puzzling, because TDCJ conceded that the jury properly awarded Thomas $30,000 for past emotional harms. This judicial admission estops TDCJ from now denying the validity of this award for purposes of calculating prejudgment interest. TDCJ does not present a single argument for denying interest accrued on a meritorious claim. Because the jury found that the Thomas suffered past emotional injuries, the district court was compelled to award prejudgment interest on those past injuries.

## C.

We have, however, refused to award prejudgment interest on harms that have yet to occur. This makes good sense, because the present value of the plaintiff's future financial harm is less than either a present or past harm. We have applied this rule consistently to awards for front pay and future emotional harms in the context of federal admiralty and maritime law.[14]

In *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290 (7th Cir. 1987), Judge Easterbrook explained the critical role of discounting, present value, and interest in determining damages accurately. Federal law requires courts to add prejudgment interest to backpay awards under 42 U.S.C. § 1981. *Id.* at 1297. Judge Easterbrook explained, however, that "interest is not available on lost future wages and pensions," because "the time value of money is already taken into account when these are discounted to present value." *Id.*

Courts must award prejudgment interest only for past harms. Today we apply that rule to future emotional harms awarded under title VII. The district court improperly awarded prejudgment interest on future harms. On remand, the court should not add prejudgment interest to either the $75,000 in future emotional harms or any damages for future emotional harms awarded by a new jury.

## VI.

---

[13] *United States v. Batson*, 782 F.2d 1307, 1316 (5th Cir. 1986) (reversing district court for failing to award prejudgment interest). *See Pegues v. Miss. State Employment Serv.*, 899 F.2d 1449, 1458 (5th Cir. 1990) (affirming prejudgment interest in title VII backpay award).

[14] *Jacobs v. N. King Shipping Co., Ltd.*, 180 F.3d 713, 720 (5th Cir. 1999) (reversing district court for awarding prejudgment interest on future loss of support award under the Death on the High Seas Act); *Couch v. Cro-Marine Transp., Inc.*, 44 (continued...)

[14](...continued)
F.3d 319, 328 (5th Cir. 1995) (reversing interest award on future pain and suffering under federal maritime law because "[p]rejudgment interest [ ] may not be awarded with respect to future damages") (citations omitted); *Boyle v. Pool Offshore Co.*, 893 F.2d 713, 719 (5th Cir. 1990) (vacating district court order awarding prejudgment interest for general pain and suffering because court should have distinguished between past and future so that it could accurately allocate interest); *Verdin v. C&B Boat Co.,* 860 F.2d 150, 158 (5th Cir. 1988) ("We have held on numerous occasions that awards of prejudgment interest on future damages are not available, for the commonsense reason that those damages compensate future harm, for which no interest could possibly have accrued before trial.").

Because we vacate the damages for emotional distress, we also vacate and remand the attorneys' fees award; the plaintiff's level of success can critically influence the proper amount of fees.[15] The judgment is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion.

---

[15]*Giles*, 245 F.3d at 491; *Williams*, 218 F.3d at 488 (vacating and remanding attorneys' fees when reversal of punitive damages reduced total judgment by 40 percent); *Bunch v. Bullard*, 795 F.2d 384, 399-400 (5th Cir. 1986) (vacating and remanding so district court could consider increasing fees because court of appeals had reinstated many claims that failed before the district court).

DENNIS, Circuit Judge, specially concurring.

I disagree with the majority opinion insofar as it reviews the excessiveness of Ms. Thomas's award by comparison to amounts awarded in prior cases. This practice is highly suspect and contrary to controlling law in this circuit. Although judgments in comparable cases may provide some frame of reference when reviewing awards for excessiveness, they do not control our assessment of an individual case. The proper focus of our inquiry is whether, based on the facts in the record, the award is entirely disproportionate to the injury sustained, not whether the award is greater or smaller than awards granted by previous juries. Because I agree, however, that $50,000 is the most that a jury could have properly awarded for future emotional distress damages in this case, I concur in the judgment.

I.

When reviewing jury awards for excessiveness, we give great deference to the jury and trial judge. We review a denial of remittitur for abuse of discretion, and we order remittitur only when "the verdict is clearly excessive."[16] As Judge Rubin expressed in <u>Caldarera v. Eastern Airlines, Inc.</u>, an award is "clearly excessive" only under extraordinary circumstances:

We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount that any reasonable man

---

[16] <u>Eiland v. Westinghouse Elec. Corp.</u>, 58 F.3d 176, 183 (5th Cir. 1995).

could feel the claimant is entitled to."[17]

Thus, although this review is necessarily subjective,[18] we do not order remittitur every time we perceive a jury award to be overly generous; rather, remittitur is justified only when the award exceeds that bounds of reason under the facts of the case.[19]

The focus of our clear excessiveness inquiry is on the facts of the case on appeal, not on the average recovery granted in like cases. A long line of precedent in this circuit establishes that "we do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts."[20] As early as 1959, in Fruit Industries, Inc. v. Petty, we stated that "[c]omparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness vel non in a particular case and . . . each case must be determined on its own facts."[21] Although we have acknowledged a limited role for comparing awards in similar cases to gauge the excessiveness of a given award, such comparisons serve only as a point of reference and are in no way

---

[17] 705 F.2d 778, 784 (5th Cir. 1983).

[18] Caldarera v. E. Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983) (internal citations omitted).

[19] Wakefield v. United States, 765 F.2d 55, 59 (5th Cir. 1985).

[20] Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1356 (5th Cir. 1988); accord Hernandez v. M/V Rajaan, 841 F.2d 582, 587 (5th Cir. 1988) ("An appellate court may not determine excessiveness by comparing verdicts in similar cases, but rather must review each case on its own facts."); Winbourne v. E. Airlines, Inc., 785 F.2d 1016, 1035 (5th Cir. 1984) ("We cannot judge the justification of damages by mere comparison with the awards upheld or reversed in other cases. Each case presents its own facts."); Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1035 (5th Cir. 1984) ("[W]e do not determine excessiveness by comparing verdicts rendered in different cases; each case must be determined on its own facts."); Allen v. Seacoast Prods., Inc., 623 F.2d 355, 365 (5th Cir. 1980) (quoting Fruit Indus., Inc. v. Petty, 268 F.2d 391, 395 (5th Cir. 1959)); Wiley v. Stensaker Schiffahrtsges, 557 F.2d 1168, 1172 (5th Cir. 1977) (quoting Petty, 268 F.2d at 395).

[21] Petty, 268 F.2d at 395.

controlling.[22]

Despite the well-established and limited role for case comparisons in this circuit, the majority opinion moves comparability to the forefront of our excessiveness inquiry. According to the majority, an award is upheld if it falls within the range of acceptable awards established by prior cases; only after this acceptable award-range is established does the majority consider the facts supporting Ms. Thomas's award.

The majority opinion is not the first case from this circuit to deviate from our comparability case law; at least one other case from this circuit has employed the same faulty analysis.[23] This year, in Salinas v. O'Neill, a panel of this court stated that "[a] mainstay of the excessiveness determination is comparison to awards for similar injuries."[24] To support this statement, the Salinas court relied on Dixon v. International Harvester Co.,[25] the same 1985 opinion that the majority uses to justify its comparability analysis in the present case. But Dixon plainly does not state that case comparisons are the "mainstay" of our excessiveness review; rather, it states that "prior awards may be of some aid when the present award is shown to be greatly disproportionate to past awards for similar

---

[22] Wheat v. United States, 860 F.2d 1256, 1259-60 (5th Cir. 1989) ("[D]amage awards in analagous [sic] cases provide an objective frame of reference, but they do not control our assessment of individual circumstances."); Wakefield, 765 F.2d at 59-60 ("[W]hile comparison with other awards might serve as a point of reference, such comparison is not controlling."); see also In re Air Crash Disaster Near New Orleans, 767 F.2d 1151, 1160 (5th Cir. 1985) (Tate, J., dissenting) ("Essentially, it is only after an appellate court determines that an award is excessive under federal standards of appellate review, that utilization of past awards may become relevant in determining the amount to which a jury award should be reduced . . . .").

[23] See Salinas v. O'Neill, 286 F.3d 827, 830 (5th Cir. 2002).

[24] Id.

[25] 754 F.2d 573 (5th Cir. 1985).

15

injuries."[26] For this more modest claim, Dixon relies on Haley v. Pan American World Airways, Inc.[27]

Haley, which is a Louisiana diversity case, actually states that comparability provides little value in determining the excessiveness of a given award, and it applies a case comparison only because Louisiana had approved of the methodology to some extent:

> We recognize, as does the Louisiana Supreme Court, that an examination of such prior awards is of limited use in assessing the particular damages suffered by these particular claimants under these particular circumstances. However, as the Louisiana Court also appreciates, prior awards may be of some aid in determining excessiveness when "the present award is shown to be greatly disproportionate to past awards . . . for . . . 'similar' injuries."[28]

In other words, Haley engaged in a jury award comparison in accordance with Louisiana law, not federal law. The case in no way suggests that comparability is the "mainstay" of the clear excessiveness inquiry under federal law. Thus, through two inaccurate citations, the law of comparability in this circuit has been materially misstated.

To the extent that the majority opinion and similar non-controlling Fifth Circuit cases conflict with our long-standing precedent on comparing jury awards, they are not binding precedent in this circuit. Under our prior precedent rule, "the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled

---

[26] Id. at 589 (emphasis added).

[27] 746 F.2d 311 (5th Cir. 1984).

[28] Id. at 318 (quoting Reck v. Stevens, 373 So. 2d 498, 500-01 (La. 1979)) (internal citations omitted).

16

by the Court sitting en banc or by the Supreme Court."[29] Thus, in accordance with this circuit's prior holdings, a jury award is excessive only if it shocks the judicial conscience. Although case comparisons may serve a secondary role in providing a rough guide to our excessiveness inquiry, they are not controlling. The mere fact that an award is greater or less than awards in comparable cases does not justify ordering remittitur.

## II.

Sound policy arguments support this circuit's limited reliance on past awards when determining excessiveness in subsequent cases. The assessment of damages for emotional distress is so fact-driven and so largely a matter of judgment that we are rightfully hesitant to substitute our views for those of the jury.[30] Unlike the jury, we are limited to reviewing a "cold record."[31] The jury, who has the benefit of hearing live testimony and observing witness demeanor, is more qualified to determine the appropriate amount of emotional distress damages. To paraphrase Judge Rubin in Caldarera, the jury has seen the parties and heard the evidence; we have only read papers.[32]

The limitations of our hindsight review are amplified when we attempt to examine awards granted in prior cases. When reviewing prior cases, we lack even the benefit of a "cold record." Even our most thorough opinions provide only summaries of the evidence presented at trial. For instance, the

---

[29] United States v. Ocean Bulk Ships, Inc., 248 F.3d 331, 340 n.2 (5th Cir. 2001) (citing Smith v. GTE, 236 F.3d 1292, 1300 n.8 (5th Cir. 2001)).

[30] See, e.g., Caldarera v. E. Airlines, Inc., 705 F.2d 778, 783 (5th Cir. 1983); Shows v. Jamison Bedding, Inc., 671 F.2d 927, 934 (5th Cir. 1982).

[31] See In re Clay, 35 F.3d 190, 194 (5th Cir. 1994) ("[A] cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial."); accord Caldarera, 705 F.2d at 782 ("Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom.").

[32] Caldarera, 705 F.2d at 782.

17

majority compares the present case to Giles v. General Electric Co., an employment discrimination case involving the remittitur of an emotional distress award.[33] The Giles opinion, however, summarizes the facts relevant to the emotional distress award in only two sentences:

> Giles testified that he has had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at GE and his service as treasurer of the local union. Joyner testified that Giles appeared "despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work."[34]

Without more insight into the nature and quality of this testimony, the Giles opinion provides little guidance in our determination of whether $100,000 was an excessive award under the facts of this case. Unless we aim to create an award schedule for intangible injuries like sleeplessness, marital difficulties, and loss of prestige, I see no way of determining whether a subsequent award is excessive based on the factual summary provided in Giles.[35]

In addition to the problems associated with our lack of information about past jury awards, there is the separate concern of deciding which past awards we should consider. In order to establish the permissible range for Title VII emotion distress awards, the majority considers five employment discrimination cases in which we approved six-figure emotional distress awards. Three of those

---

[33] 245 F.3d 474 (5th Cir. 2001).

[34] Id. at 488.

[35] As one observer has commented, "The doctrine of comparability is based on the erroneous assumption that plaintiffs with the same or similar causes of action must have suffered similar injuries; therefore, the amounts awarded to compensate those plaintiffs should be comparable." J. Patrick Elsevier, Note, Out-of-Line: Federal Courts Using Comparability to Review Damage Awards, 33 Ga. L. Rev. 243, 259 (1998) (analyzing the variance of damage awards in the Seventh Circuit strip search cases).

18

opinions, Forsyth,[36] Rizzo,[37] and Williams,[38] are of little value to our excessiveness inquiry. None of those cases involves a remittitur or a damage award that was found to be excessive. As we have stated at least twice before, cases in which a jury verdict is upheld "shed no light on how high an award must be to be 'excessive.'"[39] In other words, our decision to affirm a jury award only indicates that the given award was not excessive; it says nothing about the maximum award that could have been awarded under those facts.

Finally, even assuming that we analyze the appropriate cases, the information that those cases provide is of questionable value. First, the sample size of relevant cases is often too small to realize any sort average maximum award.[40] Many of our cases employing case comparisons analyze fewer than three cases to determine whether a given award is clearly excessive.[41] Second, there is no reason to assume that a value assigned to a particular injury by a prior jury is any more correct than the value assigned by a subsequent jury. Dignitary injuries like emotional distress are necessarily based on the decision-maker's subjective impressions.[42] It seems hopelessly arbitrary to gauge the excessiveness

---

[36] Forsyth v. City of Dallas, 91 F.3d 769 (1996).

[37] Rizzo v. Children's World Learning Ctrs. Inc., 173 F.3d 254 (1999).

[38] Williams v. Trader Publ'g Co., 218 F.3d 481 (2000).

[39] Shows, 671 F.2d at 934 ("In most of these cases . . . the jury verdicts were upheld, and they thus shed no light on how high an award must be to be 'excessive.'"); accord In re Air Crash Disaster Near New Orleans, 767 F.2d at 1156 ("Of course, simply because certain awards have been *affirmed* does not indicate that these are the highest, or even near the highest awards which might be allowed.").

[40] See Elsevier, supra note 20, at 265-66.

[41] See, e.g., Salinas v. O'Neill, 286 F.3d 827, 831 (5th Cir. 2002) (comparing the award to two cases); Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001) (comparing the award to one other case).

[42] Forsyth v. City of Dallas, 91 F.3d 769, 774 (1996) ("Judgments regarding noneconomic damages are notoriously variable.").

of all future emotional distress awards against a handful of prior awards that are not based on objective criteria.

III.

Despite my fundamental disagreement with the case-comparison methodology employed by the majority, I concur in the result rendered. In the present case, the evidence cannot support an award for $100,000 in future damages. As discussed in Section IV. C. of the majority opinion, Ms. Thomas's emotional distress evidence is predominantly attributable to her past emotional distress award. The record indicates that Ms. Thomas now works at another unit and is no longer serving under racially discriminating supervisors. Every witness testifying about her emotional state, including Ms. Thomas herself, stated that her condition has improved since her transfer from the Estelle Unit. The only evidence that Ms. Thomas will suffer future emotional distress was Thomas's testimony that she fears that she will never be promoted and her continued stress and fatigue. It seems patently excessive to award Ms. Thomas over three times the amount of damages that the jury awarded her for her past emotional distress (which was demonstrably more severe than her future emotional distress). I agree with my colleagues that $75,000 is the most that the could have reasonably awarded and is therefore the appropriate level of remittitur.