# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10033

United States Court of Appeals
Fifth Circuit

**FILED**

February 29, 2016

Lyle W. Cayce
Clerk

PRE-WAR ART, INCORPORATED; GAGOSIAN GALLERY, INCORPORATED,

      Plaintiffs - Appellants

v.

STANFORD COINS AND BULLION, INCORPORATED; DILLON GAGE INCORPORATED OF DALLAS, doing business as The Dillon Gage Group, doing business as Dillon Gage Metals,

      Defendants - Appellees


RALPH S. JANVEY, Receiver,

      Appellee

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-559

---

Before STEWART, Chief Judge, and REAVLEY and DAVIS, Circuit Judges.

PER CURIAM:*

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10033

Plaintiff-Appellant Pre-War Art, Inc., d/b/a Gagosian Gallery (the "Gallery") appeals a judgment entered on a jury verdict in favor of Defendant-Appellee Dillon Gage Incorporated of Dallas d/b/a The Dillon Gage Group d/b/a Dillon Gage Metals ("Dillon Gage"). We affirm.

I.

This case arose from the Gallery's purchase of a large quantity of gold. The relevant facts produced at trial taken in the light most favorable to the verdict are as follows.

The Gallery planned to display a work of art featuring a tower of identical gold bars. To assemble the artwork, the Gallery ordered 101 gold bars from Stanford Coins and Bullion, Inc. ("SCB"), a business owned by a now-disgraced financier, Allen Stanford ("Stanford"). The Gallery wired SCB the approximately $3 million purchase price. In return, SCB promised to deliver one gold bar to the Gallery immediately. SCB promised to deliver the remaining 100 gold bars to the Gallery on March 4, 2009, shortly before the Gallery was scheduled to exhibit the artwork.

SCB then contacted Defendant-Appellee Dillon Gage, a wholesale supplier of coins and bullion with which SCB had an ongoing business relationship, and arranged for Dillon Gage to drop-ship the 101 gold bars directly to the Gallery. SCB informed Dillon Gage that the Gallery wanted the 101 identical gold bars to assemble an art exhibit. SCB took its commission out of the $3 million payment it received from the Gallery and wired the remainder of the money to Dillon Gage. Dillon Gage applied this payment to SCB's outstanding debt, which SCB had incurred with Dillon Gage during the course of other transactions for clients other than the Gallery. SCB did not inform the Gallery at this time that it had contracted with Dillon Gage to furnish the gold

bars, and the Gallery had no information about where or how SCB was acquiring the gold.

Pursuant to its deal with SCB, Dillon Gage immediately drop-shipped the single gold bar to the Gallery. However, several weeks before the date by which SCB had promised to deliver the remaining 100 gold bars, Stanford was charged with fraud, and a federal court placed all of Stanford's companies, including SCB, into a receivership.

The director of the Gallery learned of the receivership and contacted SCB to determine whether SCB would timely deliver the gold. For the first time, SCB informed the Gallery that it had contracted with another entity, namely Dillon Gage, to supply the gold for the exhibit.

On February 19, 2009, the Gallery contacted Dillon Gage for the first time and inquired whether it would timely deliver the gold to the Gallery. Dillon Gage told the Gallery it would not deliver the gold without instructions from SCB's receiver. Dillon Gage also informed the Gallery that, because Dillon Gage had applied SCB's $3 million payment to the outstanding debt that SCB incurred as a result of its previous orders for other clients, Dillon Gage could not deliver the remaining 100 gold bars to the Gallery until SCB paid it an additional $2 million.

The receiver ultimately did not pay the balance SCB owed to Dillon Gage for the gold. As a result, Dillon Gage never delivered the remaining 100 gold bars to the Gallery.

The Gallery then sued Dillon Gage[1] for breach of contract under Texas law.[2] Although the Gallery was not a formal party to the contract between SCB

---

[1] The Gallery also sued SCB, but this appeal does not implicate the Gallery's claims against SCB.

[2] We have diversity jurisdiction over the case.

No. 15-10033

and Dillon Gage, the Gallery sought to enforce the contract against Dillon Gage as a third-party beneficiary to that contract.

The case proceeded to trial. The jury returned a verdict in Dillon Gage's favor and rejected the Gallery's third-party beneficiary claim. The Gallery then filed a motion for judgment as a matter of law, which the district court denied. The Gallery now appeals.

## II.

Under Texas law, "there is a presumption against conferring third-party-beneficiary status on noncontracting parties."[3] Nevertheless, "a third party may enforce or challenge a contract between others" if the parties enter into that contract with the intent to benefit the third party.[4] "A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit."[5] "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'"[6] Importantly, "[i]ncidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract."[7]

## III.

The Gallery argues that the evidence introduced at trial fully supported its position that SCB and Dillon Gage entered into their contract with the

---

[3] *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).

[4] *Id.* (citing *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975)).

[5] *Id.* (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

[6] *Id.* (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

[7] *Id.* (citing *MCI Telecomms. Corp.*, 995 S.W.2d at 652).

intent to directly benefit the Gallery as a third-party beneficiary. According to the Gallery, Dillon Gage knew that the Gallery had paid SCB a sizable sum of money to order a large quantity of gold bullion for a specific and unusual purpose; namely, to create an art installation. The Gallery further contends that Dillon Gage's agreement to drop-ship the gold bars directly to the Gallery instead of to SCB strongly indicated that Dillon Gage intended the Gallery to benefit from its transaction with SCB. Thus, argues the Gallery, the contract between Dillon Gage and the Gallery was a bespoke transaction, different from Dillon Gage's previous agreements to provide bullion to SCB's other clients. As a result, the Gallery claims that the evidence supported its right to enforce the contract against Dillon Gage.

Dillon Gage, by contrast, argues that the evidence was uncontradicted that SCB had one contract with the Gallery and a completely separate contract with Dillon Gage. Dillon Gage further emphasizes the evidence showing that it did not intend its contract with SCB to directly benefit the Gallery. Dillon Gage asserts that it is a wholesaler that typically deals with retail dealers like SCB, not the ultimate consumer. Dillon Gage contends that its agreement to drop-ship gold bars to the Gallery was a common accommodation it provided to SCB and other customers during the regular course of its business. Dillon Gage claims that it had no instructions to earmark the $3 million payment from SCB for this particular transaction and it had no reason to do so. Rather, Dillon Gage applied the $3 million to SCB's outstanding debt, and then sent out 74 orders to SCB's other customers that SCB had previously placed without paying the purchase price. Dillon Gage also emphasizes that the invoice it issued to SCB did not mention the Gallery or otherwise indicate that the parties intended the transaction to benefit the Gallery. Dillon Gage further emphasizes that the Gallery was unaware that Dillon Gage was in any way involved with the transaction until SCB was placed into a receivership. For

No. 15-10033

these reasons, Dillon Gage claims that the Gallery cannot be a third-party beneficiary to Dillon Gage's contract with SCB.

IV.

The jury explicitly found that the Gallery was not "a third-party beneficiary of the agreement between [SCB] and Dillon Gage" and accordingly entered a verdict in Dillon Gage's favor. The Gallery now challenges the jury's verdict on two grounds. It first argues that the district court misadvised the jury regarding the third-party beneficiary standard under Texas law. The Gallery also argues that the district court erroneously denied its post-verdict motion for judgment as a matter of law.

A.

We first consider the Gallery's challenge to the jury instructions. The Gallery contends that the district court erred by refusing to explicitly instruct the jury that an oral contract can create a third-party beneficiary relationship. The Gallery also objects to the following sentence from the jury instructions: "The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third-party must be denied." According to the Gallery, the phrase "spelled out" erroneously implies that an oral contract cannot create a third-party-beneficiary relationship. The Gallery therefore requests a new trial.

"This court reviews challenges to jury instructions for abuse of discretion."[8]

_____

[8] *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 293 (5th Cir. 2002) (citing *United States v. Huynh*, 246 F.3d 734, 738 (5th Cir. 2001)).

Dillon Gage argues that the Gallery failed to preserve its objection to the jury instructions, so this Court should review the instructions for plain error rather than for abuse

6

No. 15-10033

> Because of the broad discretion afforded district courts in framing the instructions to the jury, we will find such an abuse of discretion only if the charge as a whole is not a correct statement of the law and does not clearly instruct the jurors regarding the legal principles applicable to the factual issues before them.[9]

We will reverse only if "the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[10] "A single inaccurate, ambiguous, or incomplete clause does not dictate reversal if the instructions as a whole properly express the law."[11] "Even if the challenger proves the instructions misguided the jury, we reverse only if the erroneous instruction affected the outcome of the case."[12]

The district court did not abuse its discretion here. The jury instructions quoted almost verbatim from a recent Supreme Court of Texas case describing the standard for third-party beneficiary status under Texas law.[13] Crucially, that Texas case contains the following phrase: "The intent to confer a direct benefit upon a third party '*must be clearly and fully spelled out* or enforcement by the third party must be denied.'"[14] Thus, the phrase in the jury instructions to which the Gallery objects comes directly from the Texas Supreme Court. As a result, the instructions correctly stated the applicable legal principles.

The Gallery argues that the questions that the jury posed to the court during its deliberations demonstrate that the jury was confused regarding whether an oral contract can give rise to a third-party beneficiary

---

of discretion. We will assume that the more favorable abuse of discretion standard applies because the Gallery's challenge fails under either standard of review.

[9] *Id*. (citing *Huynh*, 246 F.3d at 738).

[10] *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 365 (5th Cir. 2002) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)).

[11] *Id*. (citing *Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. & Sur. Co.*, 625 F.2d 1167, 1169 (5th Cir. Unit A 1980)).

[12] *Id*. (citing *Deines*, 164 F.3d at 279).

[13] *See Lomas*, 223 S.W.3d at 306.

[14] *Id*. (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651) (emphasis added).

relationship.[15] We disagree. The jury never asked whether an oral contract can create a third-party beneficiary relationship. The questions the jury did ask do not indicate that the jury thought an oral contract was insufficient to create third-party beneficiary status.

Thus, "the instructions as a whole properly express[ed]" Texas law regarding third-party beneficiary status.[16] Therefore, the district court did not abuse its broad discretion in framing the issues for the jury.

## B.

The Gallery next contends that the district court erroneously denied its post-verdict motion for judgment as a matter of law. According to the Gallery, the evidence introduced at trial unambiguously demonstrates that SCB and Dillon Gage intended to confer a direct benefit upon the Gallery when they formed their contract to deliver the gold bars to the Gallery. Thus, claims the Gallery, the evidence was insufficient for the jury to decide in Dillon Gage's favor on the Gallery's third-party breach of contract claim.

---

[15] Those questions were as follows:

[1] Must all of the criteria for third party beneficiary status . . . be met in order to answer "yes" or is it sufficient that any one criterium [sic] be met? (We understand that the donee/creditor distinction is one or the other.)

\* \* \*

[2] In order to qualify as a creditor beneficiary, must the "duty or legally enforceable commitment owed by the promisee" exist at the time the contracting parties entered into the agreement, or may it arise subsequently?

[16] *See Thomas*, 297 F.3d at 365 (citing *Vicksburg Furniture Mfg., Ltd.*, 625 F.2d at 1169).

No. 15-10033

"We review *de novo* a denial of a motion for judgment as a matter of law."[17] We will reverse the jury's verdict "only if there [wa]s 'no legally sufficient evidentiary basis for a reasonable jury to find for'" Dillon Gage.[18] "'[W]e view all evidence and draw all reasonable inferences in the light most favorable to the verdict' and reverse only when the evidence and inferences 'point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'"[19]

After reviewing the trial record, we conclude that the evidence does not "point so strongly in favor of" the Gallery "that a rational jury could not reach" a verdict in Dillon Gage's favor.[20] Dillon Gage presented sufficient evidence from which the jury could reasonably infer that Dillon Gage's contract with SCB was only intended to benefit SCB, and was not intended to benefit the Gallery as a third-party beneficiary. Under these circumstances, the district court correctly denied the Gallery's motion for judgment as a matter of law.

AFFIRMED.

---

[17] *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (citing *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007)).

[18] *Id.* (citing *Receivable Fin. Co.*, 501 F.3d at 405).

[19] *Id.* (citing *Receivable Fin. Co.*, 501 F.3d at 405).

[20] *See id.* (citing *Receivable Fin. Co.*, 501 F.3d at 405).