**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-20124

BEVERLY THOMAS,

Plaintiff-Appellee,

versus

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
 INSTITUTIONAL DIVISION,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

July 25, 2000

Before KING, Chief Judge, REAVLEY, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Texas Department of Criminal Justice, Institutional Division ("TDCJ") appeals a jury verdict

in favor of Beverly Thomas ("Thomas") on her claims of racial and gender discrimination, and

retaliation. For the following reasons, we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL HISTORY

Thomas began working for TDCJ in 1979 at the Gatesville Unit. In 1985, she was promoted

to Sergeant of Correctional Officers. Then, in 1993, she was transferred to Estelle Unit in Huntsville,

Texas. In July 1995, Thomas was promoted to Lieutenant of Correctional Officers, and assigned to

work with high security prisoners. Shortly after she was promoted to lieutenant, Thomas requested housing at Estelle Unit. According to the TDCJ benefit policy certain classifications of employees, including lieutenants, are allowed to live in state-owned housing rent free. The housing policy states that the residential housing is made available to insure the immediate availability of essential personnel in times of emergency.

Thomas first requested housing from Warden Fred Becker ("Becker"). Thomas testified that Becker told her he would like to give her a house, but they were all under major renovation. Thomas testified that at Becker's suggestion, she wrote a letter asking to be placed on a waiting list for a house. In February 1996, Fred Figueroa ("Figueroa") became Warden of Estelle Unit. Thomas met with Figueroa and requested that she be assigned housing. Figueroa asked Thomas whether she was married or had children. Thomas told him that she was single and all of her children were adults. Figueroa then informed her that her chances of getting a house were slim to none because he would place families into a house before a single person. When Thomas asked him why he preferred families over single persons, Figueroa informed her that it was his "policy" to make housing arrangements in this manner. In June 1996, Thomas filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), stating that TDCJ had denied her housing on the basis of her gender.

In November 1996, Thomas applied for a promotion to Captain of Correctional Officers. She was denied the promotion in December 1996 and January 1997. Three white males were hired to fill the three Captains of Correctional Officers positions. In April 1997, Thomas filed a second EEOC charge stating that she had been denied the promotion to Captain due to discrimination on the basis of race and gender, and retaliation.

In February 1997, Thomas brought suit against TDCJ in federal court alleging discrimination in TDCJ's denial of her request for housing and its failure to promote her. Thomas offered an amendment to the pretrial order which was allowed by the district court which added racial discrimination to her charge of gender discrimination regarding the denial of housing. In February 1998, TDCJ placed Thomas in a house at Estelle Unit. Following a jury trial, the jury found that Thomas had established by a preponderance of the evidence that TDCJ discriminated against her on the basis of race and gender in its decision not to provide housing to Thomas until February 1998. The jury further found that TDCJ discriminated against Thomas in its decision not to promote her to Captain of Correctional Officers. Finally, the jury found that TDCJ retaliated against Thomas by failing to promote her to Captain of Correctional Officers. The jury awarded Thomas $107,000 in compensatory damages. The district court entered final judgment awarding Thomas that amount in compensatory damages, back pay based on the salary adjustment for a Captain, and attorneys' fees. The district court also entered an interim injunction that prohibited TDCJ and agents or representatives from any further racial or gender discrimination against Thomas, ordered that Thomas be transferred away from Estelle Unit to insure that no physical harm or retaliation occurred, and also ordered that upon her reassignment Thomas be assigned to an appropriate state house. In its final order, the district court entered an injunction prohibiting TDCJ's Director, Warden or designees from "directly or indirectly establishing a housing policy contrary to state or federal law mandates that a no harassment policy coupled with a preventive system that is sensitive to gender discrimination and retaliation be implemented."

DISCUSSION

TDCJ argues on appeal that the district court erred in failing to grant its post-judgment motion styled "renewed motion for judgment as a matter of law and alternative motion for new trial." TDCJ further contends that the district court made several erroneous evidentiary and other trial rulings that resulted in TDCJ receiving an unfair trial. TDCJ also argues that the district court erred in its charge to the jury by including racial discrimination in the jury interrogatory on housing, and by referring to housing as an emolument in the jury charge. Finally, TDCJ contends that the trial court erred in entering a permanent injunction against TDCJ.

I.      Judgment as a Matter of Law and Alternative Motion for New Trial

        A.      Standard of Review

TDCJ challenges the district court's denial of its renewed post judgment motion for judgment as a matter of law, and its alternative motion for a new trial. This court reviews a motion for new trial for abuse of discretion. See Keller Richards Manufacturing Co., 817 F.2d 1197 (5th Cir. 1987). We review a district court's denial of a motion for judgment as a matter of law de novo. See Scott v. University of Mississippi, 148 F.3d 493, 504 (5th Cir. 1998) (citing Travis v. Board of Regents of the Univ. of Tex. Sys., 122 F.3d 259, 263 (5th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1166, 140 L.Ed.2d 176 (1998)). "A motion for judgment as a matter of law ... in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Harrington v. Harris, 118 F.3d 359, 367 (5th Cir.1997) (internal quotations and citation omitted). If reasonable persons could differ in their interpretation of the evidence, then the motion should be denied. Baltazor v. Holmes, 162 F.3d 373, 373 (5th Cir. 1998). A post-judgment motion for judgment as a matter of law should only be granted when "the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." Waymire v. Harris County, Texas,

4

86 F.3d 424, 427 (5th Cir. 1996). We accord great deference to the jury's verdict when evaluating the sufficiency of the evidence, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the verdict. Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir.1996) (en banc) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled on other grounds).

Under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence; once established, the prima facie case raises an inference of unlawful discrimination. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed. 2d 407 (1993). If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case disappears. Burdine, 450 U.S. at 255 n.10. The plaintiff is accorded the opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. See Hicks, 509 U.S. at 507-08; Burdine, 450 U.S. at 253. However, in a case such as this one when there has been a trial on the merits, we need not address the sufficiency of the prima facie case, but instead we will proceed to the ultimate question of whether the plaintiff presented enough evidence for a jury to find that discrimination occurred. Baltazor, 162 F.3d at 373 (citing Harrington, 162 F.3d at 367).

B.      Failure to Promote

TDCJ argues that there was not sufficient evidence presented for a reasonable juror to find that TDCJ engaged in racial and gender discrimination when it failed to promote Thomas to the

5

position of Captain of Correctional Officers. Thomas sought promotion to this position in December 1996 and January 1997. The posting for the position stated the minimum qualifications for the position. These qualifications included four years full-time correctional custody/law enforcement experience, two years of supervisor position experience, at least one year of mid-level manager experience, and 30 semester hours from an accredited college or university. The posting also stated that cultural diversity and sensitivity training was preferred.

Ultimately, three white male officers were promoted to the position of Captain. At trial Thomas demonstrated that she met all of the qualifications for the position including over 15 years of experience as a correctional officer, ten years as a sergeant, one and a half years of mid-level supervisory experience, and the required college hours. Thomas also presented evidence that she had completed her cultural diversity and sensitivity training. There was ample testimony from various correctional officers and administrators at TDCJ who testified that Thomas had an excellent record. One fellow officer testified that he had never worked with anyone he felt would be a better Captain. TDCJ argues that Thomas was less qualified because the three white males promoted all had more mid-level supervisory experience, and gave better answers at the interview. Thomas presented counter evidence showing that one of the officers who was ultimately promoted represented on his application that he had only 18 hours of college credits, and the minimum qualifications stated that 30 hours of college credit were required.[1] One of the other officers who was ultimately promoted stated on his application that he had 38 hours of college credit, and his transcript ultimately showed

_____

[1] In its reply brief to this court TDCJ states that "the undisputed evidence in the record is that the Captain position did not require 30 college credit hours and no official document stated such." Defendant's trial exhibit 11 which is a TDCJ position description for Captain of Corrections lists under the heading "minimum qualifications" 30 semester hours from an accredited college or university.

6

he had completed only 32 hours. Therefore, although we acknowledge that there was conflicting evidence presented to the jury regarding TDCJ's failure to promote Thomas, ultimately we conclude that Thomas presented evidence of sufficient force and persuasiveness to allow a reasonable juror to conclude that TDCJ engaged in gender and racial discrimination.

C.    Retaliation

To establish a retaliation claim, the plaintiff must establish:  (1) the employee engaged in activity protected by Title VII;  (2) the employer took adverse employment action against the employee;  and (3) a causal connection exists between that protected activity and the adverse employment action.  Mattern v. Eastman Kodak, 104 F.3d 702, 705 (5th Cir. 1997).  The ultimate question in an unlawful retaliation case is whether the defendant discriminated against that plaintiff because she engaged in conduct protected by Title VII.  Long v. Eastfield College, 88 F.3d 300, 304 n.4 (5th Cir. 1996).  Thomas engaged in protected activity by filing two EEOC claims against TDCJ for failure to provide her with housing and failure to promote her to Captain of Correctional Officers. Thomas plead that since her EEOC complaints, she was unable to transfer out of Estelle Unit or be promoted.[2]  Thomas presented several incidents as circumstantial evidence that TDCJ was engaging in retaliation against her.  First, Thomas presented evidence that when she was ultimately given a house in February 1998, the house was in deplorable condition.  Upon inspection of the house, Thomas and others who accompanied her testified that the house had kitchen cabinets torn off, stains

_____

[2] Thomas also plead that she experienced "ongoing retaliation" by being assigned perimeter check at night, receiving formal discipline, and being assigned a house which was in unlivable condition.  However, to form the basis of a retaliation claim, the adverse employment action taken must be an "ultimate employment decision."  Mattern, 104 F.3d at 707.  An ultimate employment decision includes acts such as hiring, granting leave, discharge, promotion and compensation.  Id. Therefore, we will only consider TDCJ's failure to promote Thomas, and its refusal to transfer her to other positions as acts that form the basis of her retaliation claim.

7

from dog feces on the carpet, and filthy bathrooms. Thomas also presented evidence that after her EEOC charges she was disciplined twice, and she had never received any disciplinary actions in the 18 years prior to the filing of her charges. Thomas also presented evidence that one of her superiors shouted at her about her filing grievances against TDCJ. Although, these incidents occurred after Thomas applied for promotion, they occurred during the time period in which she applied for transfers. The jury could properly consider these incidents as indications of TDCJ's motives in their failure to promote or transfer Thomas. Thus, Thomas presented sufficient evidence for a reasonable juror to conclude that TDCJ failed to promote or transfer her because she engaged in protected activity.

II.     Evidentiary Rulings

We review the district court's evidentiary rulings for abuse of discretion, and we will reverse on the basis of evidentiary errors only if they resulted in substantial prejudice. See Bennett v. Pippin, 74 F.3d 578, 589 (5th Cir. 1996) (citing Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir.1990).

A.     Amendment of Pretrial Order

TDCJ argues that the district court erred in allowing Thomas to amend her pretrial order to include a charge of racial discrimination regarding TDCJ's failure to provide her with housing. A trial court has broad discretion in determining whether a pretrial order should be modified or amended. In the Matter of: El Paso Refinery, 171 F.3d 249, 255 (5th Cir. 1999). The EEOC charge filed by Thomas after she was denied state-owned housing only alleged sex discrimination. In her Second-Amended Complaint Thomas's only allegation regarding the housing claim was that TDCJ refused to provide her with housing on the basis of sex. On the fifth day of a six day trial Thomas moved to

8

file a Third Amended Complaint and an amendment to the pretrial order to reflect that her housing claim was based on both gender and race discrimination. The district court held that Thomas's Title VII claim would have been within the scope of an EEOC investigation into Thomas's initial gender charge and granted the motions. At the close of evidence the jury was submitted four different interrogatories. The first asked whether TDCJ discriminated against Thomas by denying her housing on the basis of her race and gender.

The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Young v. City of Houston, 906 F.2d 177, 179 (5th Cir. 1990) (citing Sanchez v. Standard Brands, 431 F.2d 455, 466 (5th Cir. 1970)). In the present case, the EEOC charge dealing with housing only alleged gender as the theory of discrimination, not race. After carefully reviewing the chronology of events and the facts in this case, we conclude that the district court's ruling that Thomas's later asserted race claim was necessarily encompassed in her gender claim on housing, is unsupported by the exhibits and testimony in the record. Thus, the district court abused its discretion in allowing an amendment to the pretrial order to include race discrimination in the housing charge.[3]

B. Other Evidentiary Rulings

TDCJ contends that the district court erred on many evidentiary matters including: (1) allowing Thomas' sister to testify about housing practices at other TDCJ facilities, while barring

---

[3] The trial court's error in allowing the amendment to the pretrial order only affects Thomas's housing claim. Thomas filed a separate EEOC charge in April 1997 which complained of TDCJ's failure to promote her to Captain. Thomas checked the boxes indicating that she believed she had been denied the promotion based on her gender, race, and retaliation. The jury was asked separate interrogatories on the housing, failure to promote, and retaliation claims. Thus, the error on the submission of race as part of the housing claim does not effect the failure to promote, and retaliation claims.

Figueroa from testifying about other TDCJ units; (2) allowing references to a previous case concerning race and gender discrimination at TDCJ; (3) Allowing testimony of a witness about what she wrote for another employee in an EEOC complaint; (4) allowing Thomas to testify regarding being required to inspect the outside grounds of the prison at night; (5) allowing Thomas to testify about a superior yelling at her; (6) allowing Thomas to testify that she received two disciplinary reports in 1998; and (7) excluding testimony of a maintenance worker as to the condition of the house Thomas was assigned. TDCJ objected to Thomas's testimony on these various subjects as irrelevant and immaterial. TDCJ also argues that these rulings as a whole unfairly prejudiced TDCJ. After a careful review of each of these evidentiary rulings by the trial court, we are satisfied that the district court did not abuse its discretion, and that the defendants suffered no substantial prejudice from the court's rulings.

III.     Jury Charge

The district court has broad discretion in formulating the jury charge, and we therefore review the instructions with deference. Deines v. Texas Department of Protective and Regulatory Services, 164 F.3d 277, 279 (5th Cir. 1999) (citations omitted). Accordingly, a challenge to jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Id. (citing Mooney v. Aramco Services, Co., 54 F.3d 1207, 1216 (5th Cir.1995)). However, even erroneous jury instructions will not require reversal if based upon the entire record the challenged instruction could not have affected the outcome of the case. Id.

TDCJ argues that the district court erred in its jury instructions by: (1) including the issue of race in regards to plaintiff's housing claim; (2) referring to housing as a "an emolument and therefore

10

privilege of employment"; and (3) failing to instruct the jury on Thomas's duty to mitigate damages. We have concluded above that the district court did err in amending the pretrial order to include a charge of racial discrimination in housing, therefore, the district court also erred by including race in the jury charge.

IV.     Permanent Injunction

TDCJ argues that the district court erred by entering a permanent injunction against TDCJ. We review the district court's decision to permanently enjoin Act 1254 for an abuse of discretion. Causeway Medical Suite v. Ieyoub, 109 F.3d 1096, 1102 (5th Cir. 1997) (citing North Alamo Water Supply Corp. v. City of San Juan, 90 F.3d 910, 916 (5th Cir.1996)). "The district court abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." North Alamo Water, 90 F.3d at 916-17.

The district court's final judgment included an injunction which stated that "the Court enjoins the Director, Warden or designees from directly or indirectly establishing a housing policy contrary to state or federal law mandates that a no harassment policy coupled with a preventative system that is sensitive to gender discrimination and retaliation be implemented." Because the injunction pertains to the housing claim and relies on the jury verdict entered after the erroneous amendment of the pretrial order and jury instruction on this claim, the injunction was erroneously entered and is vacated.

CONCLUSION

We hold that the plaintiff, Beverly Thomas, presented sufficient evidence to allow a reasonable jury to conclude that TDCJ engaged in racial and gender discrimination in its failure to

11

promote Thomas to Captain, and that TDCJ also engaged in retaliation. Therefore, the district court properly denied TDCJ's renewed motion for judgment as a matter of law. We also hold that the district court erred in allowing the plaintiff to amend the pretrial order, and in its formulation of the jury charge on the housing claim. Thus, the judgment on the housing claim is REVERSED, and REMANDED for trial consistent with this opinion. This finding requires us to VACATE the permanent injunction and the award of compensatory damages. Thomas's status as a prevailing party for the purpose of attorneys' fees is undisturbed due to the jury's verdict on failure to promote and retaliation, however, due to our split disposition on the merits of this case we REMAND the award of attorneys' fees for adjustment based on the findings in this opinion. Finally, the award of back pay was made based on TDCJ's failure to promote Thomas to Captain, thus the award of back pay is AFFIRMED.