IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-41424
_____


PAMELA LOPEZ,

Plaintiff - Appellee,

versus

WEBB CONSOLIDATED INDEPENDENT SCHOOL DISTRICT; ET AL,

Defendants,

WEBB CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. L-97-CV-95
_____

July 3, 2002

Before JOLLY, HIGGINBOTHAM, and PARKER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Pamela Lopez ("Lopez") was an English as a Second Language ("ESL") teacher and coach for the Webb Consolidated Independent School District ("Webb"). Lopez asserts that Webb removed her coaching duties and later constructively discharged her in retaliation for her having filed an Equal Employment Opportunity Commission ("EEOC") charge against Webb. Webb states that it had

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

legitimate reasons for its actions. A jury found in Lopez's favor and awarded her damages on both claims. The magistrate judge denied Webb's motions for judgment as a matter of law ("JML") and for a new trial. We REVERSE the denial of Webb's motion for JML and REMAND with instructions to enter JML in Webb's favor.

I

At the time of the incidents at issue, Lopez lived in Bruni, Texas. Lopez's son attended a Webb elementary school in December 1990. In that month she made a report of sexual harassment by the elementary school principal to the then-Superintendent but did not file a formal grievance because she wanted to keep the matter confidential.[1] In June 1991 Lopez applied for a teaching job with Webb, and was hired on a part-time basis by Superintendent David Jones ("Jones") and the school board[2] to teach ESL at the elementary school. Lopez asked to work full-time, but was told there was insufficient federal funding. Lopez's first year of teaching proceeded without incident.

At the end of the school year, Lopez was offered, and she accepted, a part-time contract for the next school year. On August 4, 1992, Webb filed a complaint with the EEOC, alleging that she

---

[1]Lopez filed this complaint as a mother; she was not a Webb employee at the time.

[2]Dr. Jones made recommendations on teacher contracts to the school board and the board made the ultimate decision, but both Lopez and Jones testified that the board had always agreed with Jones's recommendations.

had not been hired on a full-time basis in retaliation for her having made the earlier sexual harassment complaint.[3] In August or September Jones offered her a full-time position at the elementary school when federal funding became available. In April 1993, Jones met with Lopez and offered her a full-time position at the high school teaching ESL and physical education, and serving as the girls' varsity volleyball and basketball coach. Jones admits telling Lopez in their meeting, in which he gave her the job, that he didn't like the way she "went about it" at the beginning of the year, and he hoped he could get over it. Lopez asserts that this referred to the EEOC charge she filed in August 1992. Jones says this referred to Lopez going directly to the school board in November 1992 and volunteering to coach sports teams, rather than coming to him first as she should have.

It is undisputed that Lopez began to experience discipline problems with some of her students in October-November 1993, although the two sides disagreed as to the source of the problems. Webb High School Principal Humberto Soliz ("Soliz") testified that some of Lopez's students came to him in November 1993 to complain about the problems and tensions in Lopez's class. On November 16, Soliz met with two counselors and a number of students who

---

[3]This charge was ultimately dismissed in a notice from the EEOC dated November 15, 1993, because Lopez had "not oppose[d] an unlawful discrimination practice covered by Title VII of the Civil Rights Act of 1964" and the EEOC therefore did not have jurisdiction to consider her claims.

3

complained about Lopez's alleged anger toward her students, her raising her voice, and her insults to students. Jones testified that he scheduled a meeting for the next day. Lopez picked up her mail at lunch that day, and received a notice from the EEOC (dated November 15) that her charge had been dismissed. A copy also was sent to Webb, but Jones testified he was unsure as to what day he received it.

There was a meeting the afternoon of November 17, about which the two sides give different accounts. Jones, Lopez, two counselors (Gloria Ramon and Raul Hernandez), and some of Lopez's students with whom she had had problems were all present. Lopez testified that Jones allowed students to scream at and berate her and that he belittled her and reprimanded her in front of the students. Counselor Ramon testified that students had come to her before November 17 to complain about problems in Lopez's classroom, no one yelled at Lopez at the meeting, Jones listened fairly to all sides, and the meeting was constructive. One of the students present also testified that there was no yelling and that Jones treated everyone fairly.

On November 30, Jones informed Lopez in writing that he was "discontinuing" her supplemental girls' athletics coaching duties because:

- Coaching responsibilities and duties are negatively affecting your classroom management.
- Coaching responsibilities and duties are negatively affecting your instructional responsibilities to

4

students, in particular, ESL classes.

• Comments to student athletes and students in the ESL classroom are uncalled for.[4]

Jones and Lopez met on November 30 to discuss the removal of her coaching duties. At this meeting Lopez told Jones she had been secretly tape-recording their conversations. She said that she did not trust him to keep his promises to her. Lopez testified that Jones reacted angrily and told her she should have taken her recordings to the EEOC because maybe that would have helped her case.

Lopez describes a number of minor occurrences after November 30 that were allegedly discriminatory. These included: a delay in installing a markerboard in her classroom; changing the locks to the gym and not giving her a key even though she was a gym teacher; secretly removing a telephone from her classroom; and investigating her telephone usage. It appears that all teachers experienced a delay in getting markerboards. Further, no other teachers had telephones in their classrooms,[5] and it appears that Lopez was not treated differently in any substantial way from the other teachers in this respect.

On May 10, 1994, Jones offered Lopez a contract for the 1994-95 school year, which she accepted. However, on May 17, Jones issued a written reprimand to Lopez, which directed her to improve

_____

[4]Letter from David Jones to Pamela Lopez, November 30, 1993.

[5]Lopez's classroom used to be the tax office.

5

in four problem areas: 1) Lopez's failure to follow school policy by bringing complaints directly to the school board rather than to Soliz and Jones first; 2) Lopez's unwillingness/inability to have a good working relationship with her coworkers; 3) Lopez's unprofessional comments to her students; and 4) Lopez's failure to communicate with her supervisors when she was going to be absent, despite having been told to do so beforehand. The letter warned Lopez that Jones might not recommend the renewal of her contract for the 1995-96 school year if she did not comply with the directives in the letter.

On May 20, Lopez failed to attend a required teacher workshop, scheduled to begin at 8:00 a.m., and did not call in beforehand. She testified that this was because she had been up all night arguing with her husband about Jones's actions. Lopez testified that by this time, she was "wrung out emotionally" and was "an emotional wreck [] . . . shaking, not sleeping, and that sort of thing."

In the light of Lopez's disregard of the directive to call in before her absences, Jones decided to recommend to the school board that they not renew Lopez's 1994-95 contract. Although the school board alone had the power to make the decision, it had never disagreed with one of Jones's recommendations, which Lopez knew. Jones put his recommendation to terminate Lopez on the school board's agenda. A school board member talked to Lopez

6

approximately two weeks before the meeting and told her that Jones was recommending that they not renew Lopez's contract. Lopez submitted her resignation to Dr. Jones several hours before the school board meeting. She testified: "I resigned because I didn't want to be fired."

## II

On July 10, 1997, Lopez filed suit against Webb under Title VII of the Civil Rights Act of 1964. She alleged that Webb had retaliated against her for the EEOC complaint she had filed, in violation of Title VII, by removing her from her coaching duties and accompanying compensation, and later by constructively discharging her. The case was tried before a magistrate judge and jury, and the jury found in Lopez's favor on her two retaliation claims. The jury awarded her $15,600 in lost earnings and $69,400 in compensatory damages for the loss of her coaching duties, and $15,000 in lost earnings and $100,000 in compensatory damages for her constructive discharge. The magistrate judge reduced the compensatory awards to $100,000 to conform with the statutory cap, and the lost earnings to $21,302.85 to conform with the evidence, although it was not clear which portions of the award were reduced. Webb moved for JML at the close of Lopez's case, at the close of all the evidence, after the verdict was returned, and after the magistrate judge rendered the judgment, at which time Webb also sought a new trial. The magistrate judge denied all of Webb's

7

motions.

III

We first address whether Lopez produced sufficient evidence to support the jury's finding that Webb's decision to remove her supplemental coaching duties and accompanying pay was motivated by the fact that she had filed a charge with the EEOC. We review the magistrate judge's denial of JML to Webb on this issue de novo. See Rubinstein v. Administrators of the Tulane Educational Fund, 218 F.3d 392, 401 (5th Cir. 2000), cert. denied, 532 U.S. 937 (2001). A motion for JML in a jury case "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." Harrington v. Harris, 118 F.3d 359, 367 (5th Cir. 1997). In evaluating the sufficiency of the evidence, this court considers "all of the evidence — not just that evidence which supports the non-mover's case — but in the light and with all reasonable inferences most favorable to the party opposing the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [JML] is proper." Boeing Co. v Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc). See also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000) (in considering motion for JML, courts review all the evidence in the record with

8

all reasonable inferences in favor of the non-moving party, and do not make credibility determinations or weigh the evidence).

We review the denial of Webb's motion for a new trial for abuse of discretion. <u>Thomas v. Texas Dept. of Criminal Justice</u>, 220 F.3d 389, 392 (5th Cir. 2000). "The [district court's] denial [of a motion for a new trial] will be affirmed unless, on appeal, the party that was the movant in district court makes a 'clear showing' of ''an absolute absence of evidence to support the jury's verdict,' thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict 'contrary to the great weight of the evidence.''" <u>Whitehead v. Food Max of Mississippi, Inc.</u>, 163 F.3d 265, 269 (5th Cir. 1998) (quoting <u>Hidden Oaks Ltd. v. City of Austin</u>, 138 F.3d 1036, 1049 (5th Cir. 1998) ((quoting <u>Dawsey v. Olin Corp.</u>, 782 F.2d 1254, 1261 (5th Cir. 1986))).

However, "[t]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." <u>Long v. Eastfield College</u>, 88 F.3d 300, 305 n. 4 (5th Cir. 1996) (citing <u>McDaniel v. Temple Indep. School District</u>, 770 F.2d 1340, 1346 (5th Cir. 1985)). In a Title VII case that has been tried to a jury, we do not consider the burden-shifting framework of <u>McDonnell-Douglas v. Green</u>, 411 U.S. 794 (1973), but we instead "inquire whether the record contains sufficient evidence to support the jury's ultimate

9

findings." Rutherford v. Harris County, Texas, 197 F.3d 173, 180 (5th Cir. 1999) (quoting Smith v. Berry Co., 165 F.3d 390, 394 (5th Cir. 1999)).

Thus, with the standards of review as a backdrop, the first issue we address is whether there is evidence to establish that the reason Webb removed Lopez from her coaching duties was to retaliate against her for filing an EEOC charge; or stated differently, is there evidence to show that if Lopez had never filed an EEOC charge, she would have been treated differently and she would not have had her coaching duties taken away. We must say that the evidence of animus on the part of Webb that would connect its actions to the EEOC charge is tenuous. Lopez filed an EEOC charge in August 1992. Subsequently, she was offered a full-time position at the elementary school, and then moved to the high school and was assigned the coaching duties that she desired, all notwithstanding her filing an EEOC charge. Her coaching duties were not removed until November 1993, after problems had arisen in her classroom. However, it does appear that Webb received the notice of the dismissal of her EEOC charge sometime in November 1993, and Jones did reference her EEOC charge in the meeting in which he removed Lopez's coaching duties. Jones's statement was admittedly in response to Lopez's revelation that she had been secretly taping their conversations. Regardless of when Webb received the

10

dismissal letter, the protected activity was filing the complaint, which occurred in August 1992.

Webb offered legitimate, nondiscriminatory reasons for its actions. Dr. Jones, Principal Soliz and Counselor Ramon all testified that serious problems had arisen in Lopez's classroom by November 1993. Jones, Ramon, and one of the students present at the November meeting -- that is, all of the witnesses to testify about the meeting except Lopez -- testified that the meeting was fair and constructive in addressing the concerns. Dr. Jones testified that he removed Lopez's coaching duties so that she could instead focus on her classroom teaching.

Lopez points to another teacher who was also the baseball coach and was accused of making derogatory comments to students. He did not immediately lose his coaching duties and pay after these allegations, but afterward his duties were removed. He had not filed an EEOC complaint.

The question is whether the evidence is sufficient to connect the removal of Lopez's coaching duties to her having filed an EEOC complaint. Lopez admits that after she filed her EEOC complaint, she was offered a full-time position. She admits she was then transferred to the high school and given the coaching duties that she desired. She further admits that it was only after documented problems arose in her classroom that her coaching duties were removed. Lopez admits that she was having problems with her

11

students, and that school counselors and officials had students come to them with these problems. Lopez agrees that coaching duties were supplementary and that it was within Jones's discretion to remove them. The only evidence that connects her removal to her filing an EEOC charge is a comment by Dr. Jones referencing her EEOC charge. This comment was made after Lopez revealed that she had been secretly taping their conversations. The only other similarly situated person to whom Lopez points did have his coaching duties removed as well. In sum, the evidence submitted by Lopez is insufficient to connect her removal from her coaching duties to her filing an EEOC charge more than one year earlier, and Webb is entitled to JML on this claim.

IV

The jury also found that Webb constructively discharged Lopez in retaliation for her having filed an EEOC charge. The standards of review of the denial of Webb's motions for judgment of a matter of law and for a new trial on constructive discharge are the same as those set out in Part III above.

Again, the question we are presented is whether there was sufficient evidence to support the jury's finding that Lopez was constructively discharged. "To prove a constructive discharge, a 'plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" <u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 566 (5th Cir.)

12

(quoting <u>Faruki v. Parsons</u>, 123 F.3d 315, 319 (5th Cir. 1994)),

<u>cert. denied</u>, 122 S.Ct. 45 (2001). This court has stated that:

> In determining whether a reasonable employee would feel compelled to resign, we have considered the relevancy of the following events: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee to resign; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

<u>Id.</u> (citations omitted). Discrimination alone, without aggravating factors, is insufficient to support a claim of constructive discharge. <u>Id.</u> (citations omitted).

We first must observe that the record contains no evidence of a causal connection between the alleged intolerable working conditions and Lopez's resignation. Lopez did not testify, or offer any other evidence, that she resigned because her working conditions had become intolerable. In fact, all of the evidence is to the contrary. Notwithstanding the alleged intolerable conditions that had occurred over the period of her employment, Lopez had in fact accepted employment for another school year. We find this fact is fairly conclusive evidence that she did not regard the conditions as so intolerable that she should not be expected to endure them. When, a few days after she accepted employment for another year, she failed to show up at a workshop without letting anyone know, Dr. Jones decided to recommend her

13

discharge to the board. At trial, when Lopez was asked why she resigned, she unequivocally testified: "I resigned because I didn't want to be fired." She offered no other reasons. Therefore, Lopez's evidence established no connection between her working conditions and her decision to resign, as required by Brown.

Even if we were to assume, however, the necessary causal connection, Lopez's working conditions were not intolerable under Brown. As evidence of a constructive discharge, Lopez points to: the allegedly groundless written reprimand; the delay in getting a markerboard for her classroom; the changing of the gym locks and the fact that she was not given a new key, even though she was a physical education teacher; and the removal of the telephone from her classroom. However, no other teachers had telephones in their classrooms, and a student testified that Lopez at times spoke on the telephone during class. Lopez therefore was not treated differently from any other teacher.

On the other hand, Lopez admits that shortly after receiving a written reprimand directing her to inform school officials beforehand when she was going to be absent, she did not show up at a required teacher workshop and did not let anyone know that she would not be there. It was undisputed that it was only after this unexcused absence that Jones decided to recommend that her contract not be renewed. Lopez offered no evidence of other employees who

14

disobeyed a rule with respect to which they had just been warned but were not discharged.

It is therefore clear that the conditions of Lopez's work were not, under Brown, so intolerable as to support a constructive discharge. A delay in getting a markerboard, which all teachers experienced, the removal of a telephone which other teachers did not have, and the denial of keys to the gym do not amount to intolerable working conditions. Neither does a written reprimand that had a basis in fact. Moreover, if the school board accepted Jones's recommendation, Lopez could have appealed this decision and gone through the grievance procedure rather than resign. In sum, the evidence is insufficient to demonstrate any of the Brown factors and Lopez has failed to produce sufficient evidence that she was constructively discharged. Webb is entitled to JML on this claim as well.

V

Having found that Webb is entitled to JML on Lopez's two retaliation claims, the only basis of liability determined by the jury, we need not address Webb's challenges to the damages awarded to Lopez nor Webb's claim that the jury was prejudiced against the defendants.

VI

15

For the foregoing reasons, we REVERSE the denial of Webb's motion for judgment as a matter of law and REMAND with instructions to enter judgment as a matter of law in Webb's favor.

REVERSED and REMANDED.