United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 30, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————

No. 03-50268

————

LORENZO PINEDA, III,

Plaintiff-Appellee.

versus

UNITED PARCEL SERVICE, INC.,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and LITTLE[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Lorenzo Pineda, III brought this retaliation suit under the Texas Commission on Human Rights Act alleging that United Parcel Services ("UPS") terminated his employment in retaliation for his engaging in certain protected activity. The jury found for Pineda. The district court denied UPS's motion for a judgment as a matter of law, but it remitted the jury's compensatory damages award. In this appeal, UPS challenges the jury verdict and seeks further remittitur of the damage award. We AFFIRM the jury's verdict and the district court's award of damages.

————

[*] District Judge of the Western District of Louisiana, sitting by designation.

## I

Lorenzo Pineda worked as a business manager for UPS at its El Paso, Texas distribution center. Pineda suffers from diabetes and took a ten month medical leave of absence to treat his condition. While on leave, Pineda filed a charge of disability discrimination against UPS for allegedly delaying his return to work. Shortly thereafter he gave a deposition in a discrimination case brought by another UPS employee. Pineda was subsequently transferred to a UPS facility in Del Rio, Texas.

While Pineda was working at the Del Rio facility, UPS human resources manager Kenny Walker investigated charges that Pineda had threatened violence against three of his coworkers. Pineda denied making any such threats. Walker first suspended and later fired Pineda.

Pineda filed this retaliation suit under Texas law in state court and UPS removed to federal court. Pineda alleged he was fired because he had engaged in the protected activities of filing a discrimination charge and testifying in a discrimination case. When UPS countered that it fired Pineda pursuant to charges by Pineda's coworkers alleging that he had made threats of violence, Pineda asserted that the investigation was a pretext for UPS's retaliatory purpose. To support his contention, Pineda presented testimonial evidence that the alleged threats of violence never occurred and that UPS had not pursued similar charges of violence and threatened violence with similar vigor.

The jury found for Pineda and awarded damages, including $400,000 worth of compensatory damages. Following the jury verdict, UPS renewed its motion for a judgment as a matter of law and sought remittitur of the compensatory damages award. The district court refused to disturb the jury verdict but remitted the compensatory damage award to $202,500. UPS now seeks review of both rulings.

II

We review a district court's denial of a motion for judgment as a matter of law *de novo*. *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000) ("*Thomas I*"). A motion for judgment as a matter of law should be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." FED. R. CIV. P. 50(a). Thus, "if reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Thomas I*, 220 F.3d at 392 (citing *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998)). "A post-judgment motion for judgment as a matter of law should only be granted when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Id.* (quoting *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996)). The jury's verdict is afforded great deference. Thus, when evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict. *Id.*

Pineda brought his retaliation claim under § 21.055 of the Texas Commission on Human Rights Act ("TCHRA").[1] *See* TEX. LAB. CODE § 21.055 (Vernon 1996) ("An employer commits an unlawful employment practice if the employer retaliates against a person who (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."). The purpose the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964. TEX. LAB. CODE § 21.001(1) (Vernon 1996); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Thus, "analogous federal statutes and the cases interpreting them guide" the reading of the statute. *Quantum*, 47 S.W.3d at 476.

---

[1] This is a diversity action, federal civil rights law is not implicated.

In a retaliation case, the plaintiff must first make a *prima facie* showing: 1) that he is engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.[2] *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Once the plaintiff makes a *prima facie* case, "the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action." *Id.* If the defendant meets this burden, then the "the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." *Id.* When there has been a trial on the merits, the evaluation process is streamlined and we proceed directly "to the ultimate question of whether the plaintiff presented enough evidence for a jury to find that discrimination occurred." *Thomas I*, 220 F.3d at 393. To satisfy this burden, the plaintiff must offer "*some* evidence . . . that permits the jury to infer that the proffered explanation was a pretext for discrimination. The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so." *Swanson v. General Services Admin.*, 110 F.3d 1180, 1185 (5th Cir. 1997).

We have consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that "but for" the discriminatory purpose he would not have been terminated. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) (plaintiff "must demonstrate that he would not have been terminated 'but for' engaging in the protected activity"); *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("even if a plaintiff's protected conduct is a substantial element in a

---

[2] Texas courts have articulated the same elements for establishing a *prima facie* case of retaliation as federal courts. *See Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex. 2000).

defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

Relying on the Texas Supreme Court's decision in *Quantum Chemical Corp. v. Toennies*, Pineda argues that for employment discrimination cases brought under the TCHRA, and in contrast to similar cases brought under Title VII, "the employer commits an unlawful employment practice if discrimination was a motivating factor for [the] employment practice, even if other factors also motivated the practice." *Quantum*, 47 S.W.3d at 479-80 (internal quotations omitted). Thus, he argues, the applicable causation requirement under the TCHRA is the less stringent "motivating factor" test, rather than the more stringent "but for" test applicable under Title VII.[3] Pineda incorrectly applies *Quantum* to this case.

In *Quantum*, the Texas Supreme Court sought to determine the proper standard of causation for both "pretext" and "mixed motive" employment discrimination suits brought under the TCHRA. *See id.* at 474. The Texas Supreme Court initially determined that "the proper standard of causation for [the plaintiff's] suit would be the 'but for' test that courts originally used for pretext claims." *Id.* at 479. However, it further determined that § 21.125(a) of the TCHRA defines the causation requirement such that the discrimination need only be "a motivating factor" in the adverse employment decision to establish liability. *Id.* at 479-80; *see* TEX. LAB. CODE § 21.125(a) (Vernon 1996). Not finding "relevant textual restrictions on the applicability of this section to unlawful employment practices," it further found that "'a motivating factor' is the correct standard of causation

---

[3] The jury in this case was instructed to apply the "but for" standard.

. . . in all TCHRA unlawful employment practice claims . . . ."[4] *Quantum*, 47 S.W.3d at 479-80.

This holding is not as broad as it first appears. Section 21.125(a) is not applicable in all employment discrimination cases under the TCHRA. Section 21.125(a) provides that "[e]xcept as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that *race, color, sex, national origin, religion, age, or disability* was a motivating factor for an employment practice . . . ." TEX. LAB. CODE § 21.125(a) (emphasis added). Section 21.055 forbids employment discrimination based on certain protected conduct rather than on any of the protected characteristics outlined in § 21.125(a).[5] *See* TEX. LAB. CODE § 21.055. Therefore, § 21.125(a) is inapplicable to employment discrimination cases brought under § 21.055 because § 21.125(a), by its own terms, is only applicable when the alleged discrimination is based on *race, color, sex, national origin, religion, age, or disability*. *See* TEX. LAB. CODE § 21.055; TEX. LAB. CODE § 21.125 (defining its purpose as clarifying prohibition against employment discrimination based on race, color, sex, national origin, religion, age, or disability).

As § 21.125(a) is inapplicable to this case, Pineda must show that "but for" UPS's discriminatory conduct he would not have been fired. *See Quantum*, 47 S.W.3d at 479 ("if section 21.125 does not apply . . . the proper standard of causation . . . would be the 'but for' test."); *see also Menefee v. McCaw Cellular Communications of Texas, Inc.*, 2003 WL 1461469 at *3, 6 (Tex.

---

[4] The central issue in *Quantum* was whether the causation requirement was different for a "pretext case" than it was for a "mixed-motive case." *See Quantum*, 47 S.W.3d at 476- 80. Therefore, when the Texas Supreme Court stated that "a motivating factor" was the causation requirement for all employment discrimination cases, the court meant that the standard was the applicable standard in both pretext and mixed motive employment discrimination cases where § 21.125(a) was applicable.

[5] In *Quantum* the Texas Supreme Court looked to § 21.125(a) for guidance because the plaintiff alleged age discrimination.

6

App.) Dallas, March 24, 2003, no pet.) (requiring the plaintiff meet the "but for" standard to establish pretext in a post *Quantum* case under § 21.055). Therefore, Pineda must demonstrate that "a discriminatory reason more likely motivated [UPS] or indirectly by showing that [UPS's] proffered reason is unworthy of credence." *See Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 296 (Tex. 2000).

Applying the "but for" causation standard, there is sufficient evidence for the jury to have found that UPS retaliated against Pineda because he engaged in protected activity. Both parties agree that Pineda engaged in protected activity, filing a discrimination complaint and giving a deposition in a separate employment discrimination suit brought against UPS. They further agree that Pineda was subsequently transferred and that UPS eventually terminated his employment. UPS asserts that Pineda was fired after an investigation headed by human resources manager Kenny Walker in response to allegations made by Pineda's co-workers that he had threatened them with physical violence, in violation of company policy. If believed, this justification is sufficient to establish an alternate, legitimate justification for Pineda's termination that would negate causation. *See Long*, 88 F.3d at 305 n.4 ("no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct").

Pineda presented sufficient evidence for the jury to determine that he was fired because he engaged in protected activity rather than because of any alleged threats of violence. Specifically, Pineda presented evidence that Walker, the human resources manager who fired him, was aware that Pineda had engaged in the protected activity. Pineda additionally testified that he did not make the alleged threats of violence that UPS claims justified his termination. Two of Pineda's coworkers further testified that, during the time period when the threats allegedly occurred, they knew of no

7

incidences where Pineda had threatened a coworker. Further they testified that Pineda was not a violent person. Pineda also presented evidence that in the two decades he worked for UPS he had never previously been accused of threatening violence. Finally, Pineda presented testimony from his coworkers that UPS employees regularly yelled at each other using profanity, that other alleged incidences of verbally abusive behavior were not investigated, and that multiple contemporaneous alleged incidences of workplace violence at UPS went unpunished.

There is sufficient evidence in the record for the jury to have found that Walker's investigation and his ultimate decision to fire Pineda was a pretext allowing UPS to retaliate against Pineda for engaging in protected activity. Specifically, the jury could have found that UPS selectively fired Pineda under this policy, despite not doing so in other similar, and arguably more egregious cases, in retaliation for Pineda having engaged in protected activity. Although the evidence is not overwhelming, and there is equally sufficient evidence to support a contrary jury verdict, a rational jury is not required to reach that contrary verdict. *See Thomas I*, 220 F.3d at 392. Therefore, the district court properly denied UPS's motion for a judgment as a matter of law.

### III

The district court's remittitur ruling is reviewed for clear error. *Fratelli Gardino S.p.A. v. Caribbean Lumber Co., Inc.*, 587 F.2d 204, 206 (5th Cir. 1979). To recover compensatory damages for emotional distress the plaintiff must 1) provide specific evidence of the nature and extent of the harm, and 2) must make more than vague allegations to support his claim. *Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 368 (5th Cir. 2002) ("*Thomas II*"). We compare the damage award to other awards in the relevant jurisdiction to determine if the award is excessive. *Id.* As this case implicates only Texas law, "we look to Texas authority, or those federal cases governed by

8

Texas substantive law, in drawing an initial point of reference for the damages awarded in this case." *Douglas v. Delta Airlines, Inc.*, 897 F.2d 1336, 1339 (5th Cir. 1990). However, as Texas courts look to federal case law to interpret the TCHRA, we will also look to cases in this Court applying federal civil rights law. *See Quantum*, 47 S.W.3d at 476. We apply the "maximum recovery rule" and remit damages only to the maximum amount the jury could have awarded and apply a multiplier. *Thomas II*, 297 F.3d at 368.

This case is unusual in that UPS seeks a further decrease in the jury's damage award in favor of Pineda. The jury awarded Pineda $400,000 in compensatory damages. The district court granted UPS's motion for remittitur. It determined that $135,000 was a proper award and applied a 50% multiplier and awarded Pineda $202,500 in compensatory damages. UPS argues this damage award is excessive because Pineda did not present sufficient evidence to support a six-figure award and that the award is high relative to those rendered in other cases.

The TCHRA allows for recovery of compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." TEX. LAB. CODE § 21.2585(d) (Vernon 1996). Pineda and his wife both testified that he suffered from depression, loss of sleep, and protracted stomach problems. Additionally, they each testified that the termination caused them marital distress. Although Pineda did not provide either medical records or doctor's testimony to buttress his contentions, he is not required to do so. *See Williams v. Trade Publ'g Co.*, 218 F.3d 481, 486 (5th Cir. 2000). We have awarded six figure verdicts in employment discrimination cases where plaintiffs have suffered from similar ailments. *See e.g. Giles v. General Electric Co.*, 245 F.3d 474 (5th Cir. 2001) ($100,000 award for sleeping trouble, headaches, and marital difficulties); *Williams*, 218 F.3d at 481 ($100,000 award for severe emotional distress, sleep

9

loss, and severe weight loss); *Forsyth v. City of Dallas, Tex,*, 91 F.3d 769 (5th Cir. 1996) ($100,000 award for depression, weight loss, intestinal troubles and marital problems).  In at least one Texas case a jury award of almost $200,000 was upheld.  *See Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30 (Tex. App.–Austin 1998, pet. denied) ($196,850 compensatory award for emotional distress).  As we are not "left with the perception that the verdict is clearly excessive" there is no reason to remit the jury's award any further.  *Thomas II*, 297 F.3d at 368 (quoting *Eiland v. Westinghouse Elec. Corp.,* 58 F.3d 176, 183 (5th Cir. 1995)).

IV

The district court's ruling denying UPS motion for a judgment as a matter of law and its damage award are AFFIRMED.