# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 13, 2011

Lyle W. Cayce
Clerk

No. 09-10660

MARK DUVALL

Plaintiff-Appellee Cross-Appellant

v.

DALLAS COUNTY TEXAS

Defendant-Appellant Cross-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

Per Curiam:

Plaintiff-Appellee Mark Duvall brought this action against Defendant-Appellant Dallas County ("the County") for personal injuries stemming from an infection that he contracted while incarcerated in the County's jail ("the Jail"). At the conclusion of a jury trial, Duvall prevailed, and the County appealed. We affirm.

## I.  FACTS AND PROCEEDINGS

Duvall was a pre-trial detainee in the Jail from December 11 to December 26, 2003.  During his stay in the prison, Duvall contracted Methicillin-Resistant Staphylococcus Aureus ("MRSA"), a staph infection resistant to usual penicillin-type antibiotics.  Duvall's physical suffering was great, and he eventually lost

No. 09-10660

the use of one of his eyes. In his § 1983 complaint, Duvall claimed that the County had deprived him of his right to due process by subjecting him to an unconstitutional condition of confinement. After the jury found for Duvall, the County timely filed a notice of appeal. The County contends that (1) the district court's jury instructions and its denial of the motion for judgment as a matter of law were erroneous because the district court relied on the wrong standard, (2) the evidence was insufficient to support the jury's finding that Duvall suffered a constitutional violation from his "condition of confinement," and (3) the evidence was insufficient to support the jury's finding that the County had, with deliberate indifference, maintained a pattern or practice that was the moving force behind the constitutional violation that Duvall suffered. Duvall filed a protective cross appeal in which he asserts that a *Monell* inquiry is not required in a "conditions of confinement" case. We affirm.

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

We review jury instructions for abuse of discretion.[1] We review the sufficiency of the evidence *de novo*[2] and will overturn the jury verdict only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [Duvall]."[3] We review the record and all of the evidence in the light most favorable to the prevailing party.[4]

### B.  DUE PROCESS VIOLATION

Duvall advanced a "conditions of confinement" claim under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

---

[1] *Dreiling v. Gen. Elec. Co.*, 511 F.2d 768, 774 (5th Cir. 1975).

[2] *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

[3] Fed. R. Civ. P. 50(a).

[4] *Thomas*, 220 F.3d at 392.

2

No. 09-10660

Because a state may not punish a pretrial detainee, conditions of confinement for such an inmate that amount to "punishment" violate the Constitution. In *Bell v. Wolfish*,[5] the Supreme Court stated that "[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."[6] We addressed this issue, *en banc*, in *Hare v. City of Corinth*,[7] making clear that a plaintiff must show deliberate indifference on the part of the municipality only in a case in which the constitutional violation resulted from an episodic act or omission of a state actor.[8]   In cases like Duvall's, that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest. In a conditions of confinement claim, "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction."[9]   As this court recognized while sitting *en banc*, "the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases."[10]

The County stipulated to the fact that "no legitimate governmental purpose was served by the allowance of the MRSA infection to be present in the Dallas County Jail between December 11-23, 2003." Contrary to the assertions

---

[5] 441 U.S. 520 (1979).

[6] *Id.* at 539.

[7] 74 F.3d 633 (5th Cir. 1996) (en banc).

[8] *See id.* at 644.

[9] *Id.*

[10] *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc) (internal quotation marks and citations omitted).

No. 09-10660

by the County, liability from this stipulation does not create a strict liability regime.   Duvall's initial and substantial burden was to establish an unconstitutional condition of confinement.

To prevail on his underlying constitutional claim, Duvall had to prove (1) "a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive";[11] (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of Duvall's constitutional rights.

The County insists that Duvall's is not a traditional "conditions of confinement" case because the County's policymaker, the Sheriff, did not promulgate a rule that brought the bacteria into the Jail.   This is correct, of course, as far as it goes, but the law is well settled that "even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices."[12]

> In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."[13]

As discussed in more detail below, the record here contains a surfeit of evidence that the County knew of the conditions complained of, yet continued to house inmates in those conditions.

---

[11] *Hare*, 74 F.3d at 645.

[12] *Id.* at 644.

[13] *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009), quoting *Hare*, 74 F.3d at 645.

No. 09-10660

Regardless, Duvall had to show that the condition was more than a *de minimis* violation. The *de minimis* exception provides a significant threshold to liability:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infection, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks. . . . Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs.[14]

The evidence here was amply sufficient to prove that the violations were serious, extensive and extended, and that they were much more than *de minimis*. Physicians testified that there was a "bizarrely high incidence of MRSA" and that they were not aware of a jail with a higher percentage of MRSA than the Jail. The jury heard evidence that the Jail experienced around 200 infections per month. Indeed, record evidence demonstrates that the infection rate of MRSA in the Jail was close to 20 percent, and that most jails in 2003 would have one or two cases per month, resulting in an infection rate of one or two percent. It would be reasonable to conclude that the infection rate in the Jail was ten to twenty times higher than in comparable jails. The record also establishes that the County's awareness of the situation preceded Duvall's confinement, and that there had been serious outbreaks of MRSA in the Jail for at least three years before Duvall's arrival.

The jury found that Duvall's injury was caused by a policy or custom of the County. Although the jury found this fact in response to the court's instruction on municipal liability under the *Monell* test, the jury's finding satisfies the need

---

[14] *Shepherd*, 591 F.3d at 454.

5

No. 09-10660

for such a showing in connection with the underlying constitutional violation as well. Under *Monell*, a plaintiff must show either an official policy or persistent and widespread customs.[15]  Under *Hare*, and consistent with the district court's jury instructions, the plaintiff must show an intended condition or practice, or show that jail officials' acts are "sufficiently extended or pervasive . . . to prove an intended condition or practice."[16]  We see no meaningful difference between these showings. "We review jury instructions with deference and will only reverse judgment when the charge *as a whole* leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[17]  We perceive no abuse of discretion, and we are convinced that the jury's finding of a custom or policy under the municipal-liability jury instruction satisfies the custom-or-policy element for purposes of the underlying constitutional violation.

Furthermore, there was sufficient evidence for the jury to find the existence of such a custom or policy for the times in question here.  It heard evidence that the Sheriff and other jail officials had long known of the extensive MRSA problem yet had continued to house inmates in the face of the inadequately controlled staph contamination.  Testimony was presented that it was feasible to control the outbreak through tracking, isolation, and improved hygiene practices, but that the County was not willing to take the necessary steps or spend the money to do so.  The measures necessary to control and eradicate MRSA were all known to jails in 2003.  Dallas County was aware of the high MRSA infection risks in the jail before 2003, and the Sheriff knew that the few measures that the jail did take in an attempt to control the rate of

---

[15] *Bulldozer v. Holmes*, 162 F.3d 368, 377 (5th Cir. 1998).

[16] *Hare*, 74 F.3d at 645.

[17] *Bradshaw v. Freightliner Corp.*, 937 F.2d 197, 200 (5th Cir. 1991) (emphasis added).

infection had been ineffective. In the face of the situation, the Jail's policy manuals for sanitation and health care did not even mention MRSA. The County relies on its promotion of hand washing, which is one means universally identified to help reduce the spread of MRSA infection. However, the jury heard evidence that the jail had refused to install the necessary hand washing and disinfecting stations and had failed to use alcohol-based hand sanitizers, which are the recommended means of hand disinfection, especially in a jail setting where much contact occurs in the cell block. Both County officials and outside experts stated that the County failed to take the well-known steps needed to control the infection. In addition, the jury heard evidence that the infection posed a significant risk of serious disease to the inmates like Duvall. This and other record evidence is a legally sufficient evidentiary basis for a reasonable jury to find a custom or practice.

Finally, the jury explicitly found that Duvall contracted MRSA while in the Jail. The evidence was more than sufficient for the jury to so conclude. The jury heard evidence that Duvall exhibited no symptoms when he arrived, that he started showing symptoms while he was in the Jail, and that the Jail had a high rate of MRSA infections before and during his stay.

### C. Municipal Liability

The County also argues that the evidence was insufficient to establish a basis for imposing § 1983 liability on the County for the underlying Due Process violation. For a municipality to be liable, the plaintiff must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation.[18] The parties dispute whether a satisfactory showing under *Monell* requires a showing of deliberate indifference. We need not answer this question, because the jury

---

[18] *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978).

properly found that the County did, indeed, act with deliberate indifference.[19]

The district court submitted Duvall's *Monell* claim for municipal liability to the jury. The court, in the charge on *Monell* liability, instructed the jury that "[t]he policy or custom must have been adopted or maintained with deliberate indifference to its known or obvious consequences." In defining deliberate indifference, the charge stated that "[d]eliberate indifference in this case means that Dallas County, through its Commissioners or Sheriff Bowls, made a conscious or deliberate choice to disregard pretrial detainees' constitutional rights to medical care, or to disregard the presence of MSRA." Based on the jury's verdict, therefore, the jury found a policy or custom that was adopted by Dallas County with deliberate indifference. Thus, even if a finding of deliberate indifference were an essential predicate for imposition of the County's liability the jury made that finding in this case.

We are aware, of course, that the standards of deliberate indifference for the underlying constitutional violation and the *Monell* showing are different: To show a violation under the episodic-acts line of cases, the plaintiff must show *subjective* deliberate indifference on the part of the particular *municipal employee* who committed the acts or omissions; to show a violation under the municipal-liability "custom or policy" line of cases, the plaintiff must show that the violation resulted from a custom or policy maintained by the *municipality* with *objective* deliberate indifference.[20] The jury charge given in this case did not delineate between objective and subjective deliberate indifference. However, the County did not ask for a delineation in the charge or object to the charge on this basis. The charge, requiring a conscious or deliberate choice on the part of

---

[19] In *Shepherd*, a recent appeal involving "conditions of confinement," we did not require the plaintiff to make a showing of deliberate indifference under *Monell*, presumably because it is unnecessary in "conditions of confinement" cases.

[20] *See Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008).

No. 09-10660

the County, is not plainly erroneous. In addition, as outlined above, the record contains sufficient evidence to support the jury's findings.

## III.  CONCLUSION

The district court did not abuse its discretion in instructing the jury on the standard for Duvall's "conditions of confinement" claim, and the jury heard sufficient evidence to determine the issues as it did.   We, therefore, affirm the judgment entered on the verdict in this fully tried case.

AFFIRMED.